400 S.E.2d 556

Donna Jo SCOTT, Individually, and as Next Friend for Donald Benjamin Wagoner and Luke Harmon Wagoner

v.

William L. WAGONER, Executor of the Estate of Timothy Allan Wagoner; Lou Ann Wagoner; and Lloyd Winters.

No. 19527.

Supreme Court of Appeals of West Virginia.

Dec. 12, 1990.

Roy David Arrington, Marlinton, for Donna Jo Scott.

David Webb, Staggers & Webb, Keyser, for Lou Ann Wagoner.

McHUGH, Justice:

This case is before the Court upon the appeal of Donna Jo Scott, from the final order of the Circuit Court of Mineral County. The appellees are William L. Wagoner, executor of the estate of Timothy Allan Wagoner, Lou Ann Wagoner, and Lloyd Winters.

The appellant and Timothy Wagoner were married on September 4, 1977. Two children were born of the marriage, both minors.

The appellant and Timothy Wagoner were divorced on June 17, 1985. The appellant was awarded custody of the two children, and Timothy Wagoner was ordered to pay child support in the amount of $200 per month per child.

In November, 1985, Timothy Wagoner married Lou Ann Wagoner, an appellee herein. Lou Ann Wagoner began having an adulterous affair with Lloyd Wayne Winters, another appellee herein. The adulterous meetings took place in the home of Timothy and Lou Ann Wagoner.

There are allegations, but no evidence in the record before this Court, that Timothy Wagoner knew of this adulterous relation-

ship and that there had been at least one confrontation between Timothy Wagoner and Lloyd Wayne Winters prior to their final confrontation on March 22, 1988.

On that date, March 22, 1988, Timothy Wagoner came home to find Lloyd Wayne Winters with his wife, Lou Ann Wagoner. A struggle apparently ensued and Lloyd Wayne Winters shot and killed Timothy Wagoner. It is alleged that Winters shot Wagoner four times.

There are also allegations, but again, no testimony on the record before this Court, that on several occasions, Winters brought a gun to the Wagoners' home during the adulterous affair.

Winters pleaded guilty to voluntary manslaughter.

The appellant brought suit in the Circuit Court of Mineral County on behalf of her two children against the estate of Timothy Wagoner, seeking to require the estate to continue paying the child support awarded to the children. The circuit court dismissed the complaint for failure to state a claim upon which relief can be granted. *See W.Va.R.C.P.* 12(b)(6).

In this appeal, the appellant contends that equity requires that the estate of Timothy Wagoner continue to make payments to support her children.

In support of this contention, the appellant relies upon this Court's decision in *In re Estate of Hereford*, 162 W.Va. 477, 250 S.E.2d 45 (1978). The issue which we addressed in *Hereford* was whether an alimony decree may survive the death of a former spouse and become a charge against the former spouse's estate. In syllabus point 2 of *Hereford*, we held:

> While as a general rule alimony does not survive the death of the payor former spouse, where there are compelling equitable considerations which militate in favor of making alimony a charge against a deceased former spouse's estate, the circuit court has the power to make such an award pursuant to the

same authority which entitles a court of equity to modify any alimony award to reflect changed circumstances.

We also pointed out in *Hereford* that a trial court could charge alimony payments against a deceased former spouse's estate if the property settlement agreements providing for alimony payments contained language such as "so long as [the former spouse] is living and has not remarried," and the divorce decree requiring such payments contained language such as "so long as [the former spouse] lives or until [the former spouse] remarries[.]" *Id.*, syl. pt. 1. We also pointed out factors that should be present where a trial court could require such continued alimony payments: (1) where the present value of alimony payments is not speculative; (2) where extenuating and equitable considerations militate in favor of continued alimony payments; and (3) where no undue hardship would be created upon other dependents. *Id.*

The appellant contends that these factors are present in the case now before us with respect to child support payments. Because the divorce decree provides for child support payments in the amount of $200 per month per child, the appellant points out that the present value is not speculative.

The appellant also maintains that, in this case, equity militates in favor of the financial protection of Timothy Wagoner's children. Specifically, the appellant argues that Lou Ann Wagoner created, by her adulterous affair, the situation leading to the fatal confrontation between Lloyd Wayne Winters and Timothy Wagoner. Moreover, Lou Ann Wagoner will receive the entire proceeds of Timothy Wagoner's estate.[1]

The appellant asserts that one of her two children suffers from extraordinary medical problems incurring expenses which could be met by child support payments. It is also asserted by the appellant that her children would have eventually benefitted from Timothy Wagoner's pension benefits,

1. It is asserted by the appellant and implied by the appellee, Lou Ann Wagoner, that Timothy Wagoner changed his will subsequent to marrying Lou Ann Wagoner so as to leave his entire estate to Lou Ann Wagoner instead of his two children.

but now cannot because such benefits did not vest due to his untimely death.

Finally, the appellant contends that no undue hardship would be created upon any other dependents involved in this case.[2]

The appellee, on the other hand, relies upon this Court's holding in *Robinson v. Robinson*, 131 W.Va. 160, 50 S.E.2d 455 (1948). The syllabus to *Robinson* held:

> Where, in a suit for divorce prosecuted by the wife, there is a decree in her favor for the divorce sought, and for the custody of children; and also, as a part of the same decree, the defendant husband is required to pay to the wife a fixed monthly sum for the support of said children, until the further order of the court; such decree is one for the payment of money, under Code, 38-3-6, and becomes a lien on the real estate of the husband, which may be enforced as the required payments accrue or mature, during the lifetime of the husband; *but may not accrue or mature, or be enforced against the estate of the husband, real or personal, after his death.*

(emphasis supplied)[3]

Judge Haymond sharply dissented from the Court's decision in *Robinson*. In his dissenting opinion, Judge Haymond reasoned that the trial court's child support order is a lien against the deceased spouse's estate by the force of *W.Va.Code*, 38-3-1, -2, and -6 [1931].[4] "The judgment is a lien by force of the statute. It does not cease to be a lien because of the death of either party and it may be enforced in equity without revival." 131 W.Va. at 174, 50 S.E.2d at 463. Judge Haymond went on to compare a child support order to that of a judgment sounding in tort:

> I think it would not be seriously contended in this, or any other, jurisdiction that a judgment based on a claim for personal injuries, which claim before judgment at common law ends with the death of the tort feasor, would lose its force and effect and could not be enforced or collected with its accruing interest after the death of the defendant. A judgment against a tort feasor rendered by a court of competent jurisdiction, by universal recognition, survives his death and continues in full force and effect as a judgment and as a charge against his estate until it is satisfied or discharged in some legal manner. I can see no distinction, in law or logic, between a judgment based upon a claim in tort in its effect upon the estate of the defendant tort feasor after his death and the decree of the court of common pleas which the majority concedes is a judgment and a lien upon the real estate of the debtor, which admittedly has not been satisfied or discharged in any legal manner, and which, as to installments to accrue after his death, by the decision of the majority, never will or can be so satisfied or discharged by payment out of his estate.

*Id.*, 131 W.Va. at 175-76, 50 S.E.2d at 463-64.[5]

Generally speaking, as this Court's *Robinson* decision reflects, "a child-support order terminates automatically on the death

---

**2.** The appellant alleges that Lou Ann Wagoner had two children from a previous marriage who are currently receiving social security benefits from Timothy Wagoner's account. There is also an allegation by the appellant that Lou Ann Wagoner received life insurance proceeds from Timothy Wagoner's employer, CSX (formerly, the B & O Railroad) following his death. However, as we have pointed out, the record in this case contains very little evidence, and there is nothing in the record to support the appellant's allegations in this regard.

**3.** *W.Va.Code*, 38-3-6 [1931] provides, in part: "Every judgment for money rendered in this State . . . shall be a lien on all the real estate of or to which the defendant in such judgment is or becomes possessed or entitled, at or after the date of such judgment."

**4.** *W.Va.Code*, 38-3-1 [1931] provides, in part: "A decree for land or specific personal property and a decree or order requiring the payment of money shall have the effect of a judgment for such land, property or money[.]"

*W.Va.Code*, 38-3-2 [1931] provides, in part: "The persons entitled to the benefit of any decree or order requiring the payment of money shall be deemed judgment creditors[.]"

**5.** This Court has held that *"[m]atured installments* provided for in a decree, which orders the payment of monthly sums of alimony or child support, stand as 'decretal judgments' against the party charged with the payments." Syl. pt. 1, *Goff v. Goff*, 177 W.Va. 742, 356 S.E.2d 496 (1987) (emphasis supplied).

of the parent obligated for support, insofar as future payments are concerned, unless the decree provides that payments thereunder are not to be affected by such parent's death." 24 Am.Jur.2d, *Divorce and Separation* § 1048, at 1038 (1983). *See generally* annotation, *Death of Parent as Affecting Decree for Support of Child,* 18 A.L. R.2d 1126 (1951).

It has been held by some courts, however, that if the decree specifies that child support payments are to continue during minority of the child(ren), then such an obligation will survive the death of the parent making child support payments. *Myers v. Harrington,* 70 Cal.App. 680, 684–85, 234 P. 412, 414 (1925); *Garber v. Robitshek,* 226 Minn. 398, 402–04, 33 N.W.2d 30, 33–34 (1948); *Hornung v. Estate of Lagerquist,* 155 Mont. 412, 418–19, 473 P.2d 541, 544–45 (1970); *Stone v. Bayley,* 75 Wash. 184, 134 P. 820 (1913); *cf. Newhall v. Newhall,* 227 Cal.App.2d 800, 806–07, 39 Cal.Rptr. 144, 148–49 (1964) (obligation to make child support payments upheld where agreement sets forth obligation for at least ten years, but father/payor dies after six years).

It has also been held that where the decree specifies that child support payments are to continue until further order of the court, then, again, such obligation will survive the death of the obligor. *Edelman v. Edelman,* 65 Wyo. 271, 285, 291–92, 199 P.2d 840, 845, 847–49 (1948), *reh'g denied,* 65 Wyo. 295, 203 P.2d 952 (1949); *Creyts v. Creyts,* 143 Mich. 375, 106 N.W. 1111 (1906).[6]

However, *W.Va.Code,* 48–2–15(e) [1990] evidences a very broad power possessed by the circuit court in retaining authority over child support orders. Specifically, that subsection provides, in part:

(e) *At any time after the entry of an order* pursuant to the provisions of this section, the court may, upon the verified petition of either of the parties, revise or alter such order concerning the maintenance of the parties, or either of them, and make a new order concerning the same, as the altered circumstances or needs of the parties may render necessary *to meet the ends of justice.* The court may also *from time to time afterward,* on the verified petition of either of the parties or other proper person having actual or legal custody of the minor child or children of the parties, revise or alter such order concerning the custody and support of the children, and make a new order concerning the same, as the circumstances of the parents or other proper person or persons and the benefit of the children may require[.]

(emphasis supplied)

This concept is also reflected by the decisions of this Court. "Child support is always subject to judicial modification." Syl. pt. 6, *Hereford. But cf.* syl. pt. 2, *Segal v. Beard,* 181 W.Va. 92, 380 S.E.2d 444 (1989) (trial court lacks jurisdiction under *W.Va. Code,* 48–2–15(e) to modify divorce decree when modification proceeding does not involve alimony, child support, or child custody).

In *Stewart v. Stewart,* 177 W.Va. 253, 351 S.E.2d 439 (1986), this Court restated the principle that a trial "court's jurisdiction is not abrogated or limited by the existence of child support provisions in a property settlement agreement which has been approved by the court." 177 W.Va. at

**6.** Other courts have held directly contrary. *See, e.g.,* syl. pt. 6, *In re Estate of Sweeney,* 210 Kan. 216, 500 P.2d 56 (1972) (declining to hold that decree which recites child support obligation *during minority* of children constitutes valid claim against obligor's estate). *Cf. In re Seidman's Estate,* 51 Misc.2d 339, 273 N.Y.S.2d 316 (Sur.Ct.1966) (agreement clearly indicated intention to cease payments upon obligor's death); *Kennedy v. Kennedy,* 270 S.C. 358, 242 S.E.2d 417 (1978) (decree failed to affirmatively charge obligor's estate with responsibility of continued payments).

Although not dispositive of this issue, we note that in the case now before us, the final order granting the divorce between the appellant and Timothy Wagoner and ordering child support payments, contains the following language: "except that the Court reserves the right to change the amount of child support at any time in the future[.]"

254, 351 S.E.2d at 440.[7] There, in a court-approved property settlement agreement, the husband/father conveyed his interest in two parcels of real estate in exchange for the wife/mother's waiver of her claim to alimony and child support. We invalidated the trial court's approval of this arrangement, relying upon our holding in syllabus point 2 of *State ex rel. Trembly v. Whiston,* 159 W.Va. 298, 220 S.E.2d 690 (1975): "Under the provisions of *W.Va.Code,* 48-2-15, as amended, jurisdiction to provide for the support, maintenance and education of a minor child is not abrogated or limited by the existence of child support provisions in a property settlement agreement which has been 'ratified and confirmed' in a divorce decree."[8]

■ Clearly, then, even where the parties agree that child support is a settled issue, courts may modify child support obligations in order to protect the best interests of the children.

We are of the opinion that equitable considerations, such as those that were set forth in *Hereford,* are a major factor in deciding whether or not a child support obligation should survive the death of the obligor/parent. Due to the inherent inequities arising in some cases, we are compelled to reconsider the Court's holding in *Robinson,* and instead, look to the dissenting view of Judge Haymond in that case.

■ Thus, we conclude that, in a case involving child support, if compelling equitable considerations are present, under the provisions of *W.Va.Code,* 48-2-15(e), as amended, a court has the authority to enforce the child support obligation as a lien against the deceased obligor's estate. To the extent that *Robinson v. Robinson,* 131 W.Va. 160, 50 S.E.2d 455 (1948), is inconsistent herewith, it is overruled.

■ Our decision in this case is limited to determining that the appellant has a cause of action against the appellee and the trial judge erred in dismissing the case on a Rule 12(b)(6) motion. Due to the paucity of evidence in the record below, a remand is necessary, so that, in light of our holding that the appellant's cause of action is permitted, an adequate record may be developed. Whether or not the appellant is entitled to relief, of course, will depend upon the evidence introduced.[9]

Consistent with the foregoing, the final order of the Circuit Court of Mineral County is reversed and this case is remanded.[10]

Reversed and remanded.

7. We reiterated this point on appeal after remand. Syl., *Stewart v. Stewart,* 183 W.Va. 307, 395 S.E.2d 551 (1990).

8. In *Trembly,* we also held, as has been repeatedly stated herein, that "*W.Va.Code,* 48-2-15, as amended, vests a circuit court with continuing jurisdiction to modify an order to provide for the support, maintenance and education of a minor child." *Id.,* syl. pt. 1.

9. In a cross-assignment of error, the appellee, Lou Ann Wagoner, urges that this appeal should be dismissed because many of the appellant's allegations are not supported by a designated record. We do not agree. We recognize that there was no opportunity for a record to be properly developed in this case due to the circuit court's ruling. Upon remand, a record will be developed.

10. As noted in this opinion, *W.Va.Code,* 48-2-15(e) confers upon a court very broad power in retaining authority over child support obligations, and it does not expressly exclude the obligation of child support payments after the obligor's death. We note that the *Uniform Marriage and Divorce Act* § 316(c), 9A *U.L.A.* (1973) provides, in part: "Unless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child are terminated by emancipation of the child but not by the death of a parent obligated to support the child." Thus, the *Uniform Marriage and Divorce Act,* which has not been adopted in this state, provides for certain restrictions whereby the parties to a divorce may agree that a child support obligation is terminated by the death of the obligor. Obviously, this provision is not as broad as *W.Va.Code,* 48-2-15(e), which, along with the decisions of this Court, does not authorize such restrictions on child support obligations. Rather, as we hold herein, *W.Va.Code,* 48-2-15(e) includes the authority of a court to enforce the child support obligation as a lien against a deceased obligor's estate.