694 A.2d 557

DONALD KIKEN, PLAINTIFF–RESPONDENT, v. ELLEN KIKEN, DEFENDANT–APPELLANT.

Argued January 22, 1997—Decided June 12, 1997.

442

*Louis Pashman* argued the cause for appellant (*Pashman Stein,* attorneys; *Mr. Pashman, Michael S. Stein* and *Dennis T. Smith,* on the briefs).

*Marc J. Bressler* argued the cause for respondent.

The opinion of the Court is delivered by

POLLOCK, J.

The primary issue is whether the estate of Donald Kiken is liable for the costs of the college education of his son, David, as provided in the judgment of divorce between Donald and Ellen Kiken. Ellen is Donald's former wife and David's mother. The Chancery Division, Family Part, denied Ellen's motion to enforce a provision in the judgment pertaining to the payment of David's college expenses. In an unreported opinion, the Appellate Divi-

sion affirmed. It held that Donald's obligation to contribute to college expenses terminated on his death and that his executor should not be substituted as a party in the divorce action. We granted certification, 146 *N.J.* 500, 683 *A.*2d 202 (1996), and now reverse.

I.

Donald and Ellen were married on May 9, 1976. On July 28, 1977, David was born. Thereafter, Donald and Ellen separated. They negotiated a property-settlement agreement, which was incorporated in a "Dual Judgment of Divorce" entered on December 22, 1982. Pursuant to the judgment, the court granted Ellen custody of David and accorded Donald liberal visitation rights. The court further ordered Donald to pay Ellen a lump sum of $75,000 in satisfaction of her claim for equitable distribution. Donald agreed to pay Ellen alimony totaling $87,285, payable in thirty-six monthly installments of $2,424.58 each. According to Paragraph D of the judgment, the installments were to "be paid by the first of each month commencing December 1, 1982 and ending upon the occurrence of the earliest event: November 1, 1985 (after all thirty-six payments have been made) or [Donald's] death." Paragraph E provided that "[i]n no event and under no circumstances shall [Ellen's] remarriage or death terminate [Donald's] obligation to pay aforesaid alimony payments contained herein." Donald made all the required alimony and support payments.

Paragraph F required Donald to pay $200 per week in child support until David's emancipation. Furthermore, Paragraph G obligated Donald to maintain a $200,000 life insurance policy, naming Ellen as a beneficiary of $100,000 until Donald paid the equitable distribution and naming David as the beneficiary of the remaining $100,000. After completion of the equitable distribution, David was to become the sole beneficiary of the entire $200,000 until he was emancipated. Paragraph G also indicated that "[i]f for any reason the life insurance policy is not in full force

and effect or the named beneficiaries are not consistent with this agreement, [Donald's] estate shall be liable to [Ellen] or [David] in the specific amounts set forth herein." Finally, Paragraph K provided that Donald and Ellen "will pay for college for the infant child commensurate at the time with their income and assets."

In August 1985, Donald married his second wife, Harriet. On October 24, 1985, he executed a will, which bequeathed twenty-five percent of his estate to Harriet and a nominal sum to each of his three stepsons. He also bequeathed "the proceeds of a policy of life insurance ... to my beloved son, [David]." The bequeathed policy apparently was the same one that the divorce judgment obligated Donald to maintain. Finally, he left the residue of the estate in equal shares to his mother, Harriet Kasselman, and his sister, Betty Hurwitz.

Donald, a real estate developer, died on August 11, 1986, at the age of 44. *See Del Tufo v. Township of Old Bridge*, 147 *N.J.* 90, 95–97, 685 *A*.2d 1267 (1996) (describing circumstances surrounding Donald's death). David was then nine years old. The estimated value of Donald's estate, which consisted largely of real estate, was between ten and sixteen million dollars.

Between March 1988 and October 1990, the executor made partial distributions: Harriet Kasselman, $862,500; Betty Hurwitz, $862,500; and Harriet Rinder Kiken, $575,000. According to the Deputy Surrogate of Middlesex County, approximately two million dollars remained in the estate as of October 1990. Apparently because of a decline in real estate values, no further distributions have been made from the estate, which remains unsettled. According to Ellen and David, the balance of the life insurance proceeds are invested in a mutual fund with a market value of $145,000.

In December 1994, the University of Pennsylvania granted David early admission. Subsequently, he matriculated at that university, where he continues his undergraduate studies. On March 17, 1995, Ellen filed a notice of motion to enforce litigant's rights, seeking to substitute Gerald Del Tufo, the executor of

Donald's estate, as the plaintiff in this proceeding. The notice also sought an order compelling the estate to pay David's college expenses. That request was based on Paragraph K of the divorce decree, which indicated that the parties would pay "commensurate at the time with their income and assets." Ellen is a substitute teacher. She asserts that because of the disparity between her income and the value of Donald's estate, the estate should pay the full costs of David's college education. The executor opposed the motion, arguing that the obligation to pay for David's college expenses terminated on Donald's death.

In May 1995, the Chancery Division denied the motion, finding that the agreement incorporated in the judgment of divorce did not bind Donald's estate. In so concluding, the court stated:

[A]s a human being, I really don't understand the paternal grandmother's position here at all.

I mean when we're ... dealing with the amount of money that she has inherited here. And what we're talking about in terms of sending this young man through the University of Pennsylvania. And ... what is so wrong with this child; it's her flesh and blood; maybe her only flesh and blood left. I don't know. It's amazing to me that ... grudges can be born that far....

I don't see how I can basically change this judgment of divorce to say that the estate of Donald Kiken and heirs are liable for the college expenses of the child....

I wish I could, ... [b]ecause there's so much money here—we're talking about $8, $9, $10, $11 million.

The Appellate Division affirmed. It reasoned that the absence of any language explicitly binding the respective estates for college expenses "permits the 'reasonable assumption' that the parties had intended the obligation to terminate upon death and that this not be enforceable against either party's estate." The court stated that if the parties had intended to bind their estates for college-education expenses, they would have done so expressly.

## II.

The parental obligation to support children until they are emancipated is fundamental to a sound society. *See Pascale v. Pascale,* 140 *N.J.* 583, 591, 660 *A.*2d 485 (1995) (noting that parents have

duty to provide for their unemancipated children). At issue is whether that obligation extends to the estate of an obligated parent.

In this century, the path of the law has been one of expanding notions of parental obligations to children. The parental duty of support, originally only a moral obligation springing from natural law, has become an obligation enforceable at law. *Grotsky v. Grotsky,* 58 *N.J.* 354, 356, 277 *A.*2d 535 (1971). At early common law, the duty of support terminated on the death of the parent. *See Jacobitti v. Jacobitti,* 135 *N.J.* 571, 575, 641 *A.*2d 535 (1994) (noting common-law rule in context of alimony, but declining to apply rule). More recent cases recognize that the duty may bind a parent's estate. *See, e.g., Black v. Walker,* 295 *N.J.Super.* 244, 263, 684 *A.*2d 1011 (App.Div.1996) (holding father's estate liable for illegitimate daughter's college expenses); *Della Terza v. Estate of Della Terza,* 276 *N.J.Super.* 46, 49, 647 *A.*2d 180 (App.Div. 1994) (holding father's estate liable for portion of insurance proceeds due daughter under court-ordered life-insurance policy); *DeCeglia v. Estate of Colletti,* 265 *N.J.Super.* 128, 133, 625 *A.*2d 590 (App.Div.1993) (holding that father's obligation to support illegitimate child was enforceable against his estate); *Koidl v. Schreiber,* 214 *N.J.Super.* 513, 516–17, 520 *A.*2d 759 (App.Div. 1986) (holding that support order entered against father who admitted paternity would be interpreted as requiring support payments to continue after father's death).

The continuation beyond death of a parent's support duty can arise in a variety of contexts. In an intact family, the law assumes that parents will provide for the children as well as they can. Sometimes, the parents have never married. *See, e.g., Black, supra,* 295 *N.J.Super.* 244, 684 *A.*2d 1011 (involving illegitimate child); *DeCeglia, supra,* 265 *N.J.Super.* 128, 625 *A.*2d 590 (same). Often, the parents have married, divorced, and remarried. *See, e.g., Della Terza, supra,* 276 *N.J.Super.* 46, 647 *A.*2d 180 (involving matter where daughter sued new-wife executrix of father's estate). Generally, courts assume that the parents, as the

natural guardians of a child, will provide in the separation agreement or support order for the child's needs. *See Lepis v. Lepis,* 83 *N.J.* 139, 145–46, 416 *A.*2d 45 (1980). Consequently, parents often provide in such agreements and orders for those needs. No matter what the arrangement may be between the parents, the child's needs continue. Consequently, courts have a continuing obligation to review support orders to assure that they are fair and equitable. *See id.* at 148–49, 416 *A.*2d 45.

An early Appellate Division opinion sustained the obligation of a deceased husband's estate to continue to pay alimony and support under a property-settlement agreement entered by the husband and wife. *Flicker v. Chenitz,* 55 *N.J.Super.* 273, 150 *A.*2d 688 (App.Div.), *certif. granted,* 30 *N.J.* 152, 152 *A.*2d 171, *appeal dismissed by consent,* 30 *N.J.* 566, 154 *A.*2d 452 (1959). During their divorce proceeding, the husband and wife entered a property-settlement agreement, which required the husband to make weekly payments to the wife in lieu of alimony and support. The agreement was included in the divorce decree. *Id.* at 277, 150 *A.*2d 688. On the husband's death, the wife sued to enforce the support obligation against his estate. *Id.* at 278, 150 *A.*2d 688. In sustaining the wife's claim, the Appellate Division relied more on its interpretation of the agreement than on the enforceability of the decree. *Id.* at 282, 150 *A.*2d 688. The court began by noting that by not providing that the required payments would cease on his death, the husband presumptively bound his estate. *Id.* at 280, 150 *A.*2d 688. Additionally, the court's reading of the agreement sustained the conclusion that the deceased husband had intended that the payments would survive his death. *Id.* at 281–82, 150 *A.*2d 688. The court reasoned that although support obligations are subject to judicial review, an agreement between the parties evidences the amount that they deem appropriate to satisfy those obligations. *Id.* at 286–87, 150 *A.*2d 688. Concerned that the support decree may have terminated on the husband's death, the court held that the agreement's provisions did not merge into the decree. *Id.* at 292, 150 *A.*2d 688. Although we agree with the result reached in *Flicker,* we believe a more satisfactory analysis

in the present case turns on the underlying statutory authority and the judicial review of support orders.

The extent to which divorced parents should contribute to the higher education of their children is a matter of debate. In recent years, both the Legislature and the Judiciary have recognized that in appropriate cases the duty of parental support may include liability for the costs of the higher education of children. *Newburgh v. Arrigo,* 88 *N.J.* 529, 543–44, 443 *A.*2d 1031 (1982); *Rector v. Rector,* 62 *N.J.* 577, 580, 303 *A.*2d 881 (1973); *Khalaf v. Khalaf,* 58 *N.J.* 63, 71–72, 275 *A.*2d 132 (1971); *Guglielmo v. Guglielmo,* 253 *N.J.Super.* 531, 548–49, 602 *A.*2d 741 (App.Div.1992); *Johnson v. Bradbury,* 233 *N.J.Super.* 129, 135–37, 558 *A.*2d 61 (App.Div. 1989); *Moehring v. Maute,* 268 *N.J.Super.* 477, 480–81, 633 *A.*2d 1055 (Ch.Div.1993); *Quinn v. Johnson,* 247 *N.J.Super.* 572, 578, 589 *A.*2d 1077 (Ch.Div.1991); *Ross v. Ross,* 167 *N.J.Super.* 441, 442, 400 *A.*2d 1233 (Ch.Div.1979); *Nebel v. Nebel,* 99 *N.J.Super.* 256, 262–64, 239 *A.*2d 266 (Ch.Div.), *aff'd o.b.,* 103 *N.J.Super.* 216, 247 *A.*2d 27 (App.Div.1968); Gary N. Skoloff & Laurence J. Cutler, *New Jersey Family Law Practice* 947 (8th ed.1996). Fifteen years ago, we declared that in appropriate circumstances, "parenthood carries with it the duty to assure a necessary education for children.... In general, financially capable parents should contribute to the higher education of children who are qualified students." *Newburgh, supra,* 88 *N.J.* at 543–44, 443 *A.*2d 1031. In addition, we suggested criteria to guide courts in determining whether a separated parent was obligated to contribute to a child's college education. *See id.* at 545, 443 *A.*2d 1031.

Six years later, the Legislature essentially approved those criteria when amending the support statute, *N.J.S.A.* 2A:34–23(a). *Compare N.J.S.A.* 2A:34–23(a) (listing factors to consider in determining support) *with Newburgh, supra,* 88 *N.J.* at 545, 443 *A.*2d 1031 (listing factors to consider in determining payment of education expenses); *see also Black, supra,* 295 *N.J.Super.* at 256, 684 *A.*2d 1011 (noting that Legislature recognized strong interest in

education by amending support statute). As amended, the statute provides in relevant part:

[T]he court may make such order as to the alimony or maintenance of the parties, and also as to the care, custody, education and maintenance of the children, or any of them, as the circumstances of the parties and the nature of the case shall render fit, reasonable and just ... or the performance of the said orders may be enforced by other ways according to the practice of the court. Orders so made may be revised and altered by the court from time to time as circumstances may require.

. . . .

a. In determining the amount to be paid by a parent for support of the child and the period during which the duty of support is owed, the court in those cases not governed by court rule shall consider, but not be limited to, the following factors:

(1) Needs of the child;

(2) Standard of living and economic circumstances of each parent;

(3) All sources of income and assets of each parent;

(4) Earning ability of each parent, including educational background, training, employment skills, work experience, custodial responsibility for children including the cost of providing child care and the length of time and cost of each parent to obtain training or experience for appropriate employment;

(5) Need and capacity of the child for education, including higher education;

(6) Age and health of the child and each parent;

(7) Income, assets and earning ability of the child;

(8) Responsibility of the parents for the court-ordered support of others;

(9) Reasonable debts and liabilities of each child and parent; and

(10) Any other factors the court may deem relevant.

[*N.J.S.A.* 2A:34-23(a).]

The effect of the amendment is to provide an explicit statutory basis for a support order directing a parent to contribute to the education of a child. Thus, both this Court and the Legislature have confirmed a child's need for higher education as an appropriate consideration in determining the parental obligation of support. *Ibid.; Newburgh, supra,* 88 *N.J.* at 543–44, 443 *A.*2d 1031; *Khalaf, supra,* 58 *N.J.* at 71–72, 275 *A.*2d 132. Moreover, when construing *N.J.S.A.* 2A:34-23, we have done so "liberally to the end that, where the circumstances equitably call for such action, the court may enter a support order for minor children to survive their father's death." *Grotsky, supra,* 58 *N.J.* at 361, 277 *A.*2d 535; *see also Jacobitti, supra,* 135 *N.J.* at 575, 641 *A.*2d 535

(noting that "[c]ourts are to apply the 'comprehensive' terms of *N.J.S.A.* 2A:34-23 liberally and equitably").

Although *N.J.S.A.* 2A:34-23 does not specifically say so, the statutory scheme suggests that the Legislature contemplates that a parent's support obligation is binding on his or her estate. In *N.J.S.A.* 2A:34-25, for example, the Legislature expressly stated that the duty to pay alimony terminates on the death of the payor spouse. *N.J.S.A.* 2A:34-23, however, contains no such limitation. Furthermore, the Parentage Act, *N.J.S.A.* 9:17-38 to -59, which pertains to the obligation to support children born out of wedlock, states that the death of the putative father "shall not cause abatement of any action to establish paternity, and an action to determine the existence or nonexistence of the parent and child relationship may be instituted or continued against [his] estate or [his] legal representative." *N.J.S.A.* 9:17-45(c); *see, e.g., Black, supra,* 295 *N.J.Super.* at 262-63, 684 *A.*2d 1011 (allowing action to proceed against estate); *DeCeglia, supra,* 265 *N.J.Super.* at 137, 140, 625 *A.*2d 590 (same); *Koidl, supra,* 214 *N.J.Super.* at 515-16, 520 *A.*2d 759 (indicating that estate could be liable). It seems unlikely that the Legislature would be any less concerned about continuing an obligation to support children born in the course of a marriage.

Consistent with that interpretation, the Court has declared that the Chancery Division may enter "a support order for minor children to survive their father's death and may direct the father to maintain his insurance, naming the minor children as beneficiaries," to ensure they are provided for adequately. *Grotsky, supra,* 58 *N.J.* at 361, 277 *A.*2d 535. The Court also has construed an earlier version of *N.J.S.A.* 2A:34-23 to authorize an order directing a divorced husband to cooperate in obtaining life insurance to protect his former wife and children. *Meerwarth v. Meerwarth,* 71 *N.J.* 541, 544, 366 *A.*2d 979 (1976). Similarly, the Court has required a father who was a beneficiary of a testamentary trust to secure his children's education by assigning his interest in the trust. *Rector, supra,* 62 *N.J.* at 580, 303 *A.*2d 881. Finally, the

Court has drawn on *N.J.S.A.* 2A:34–23 to require an aged divorced husband to create a trust fund to assure the payment of alimony after his death. *Jacobitti, supra,* 135 *N.J.* at 579–82, 641 *A.*2d 535.

More recently, the Appellate Division affirmed an order directing a natural father's estate to continue after the father's death to pay support for his daughter, including the cost of her college education. *Black, supra,* 295 *N.J.Super.* at 261–63, 684 *A.*2d 1011. Support agreements entered by the mother and father, who had never married, did not obligate the father to contribute to the daughter's college education. *Id.* at 249, 684 *A.*2d 1011. In finding the estate liable, the court relied on its equitable authority under the Parentage Act. *Id.* at 261–62, 684 *A.*2d 1011; *see also Grotsky, supra,* 58 *N.J.* at 361, 277 *A.*2d 535 (using equitable powers inherent in *N.J.S.A.* 2A:34–23 to order father to provide for children who survive his death).

Courts in other jurisdictions also have imposed on a deceased parent's estate the continuing obligation to support a child. *See* Susan L. Thomas, "Death of Obligor Parent As Affecting Decree For Support of Child," 14 *A.L.R.*5th 557 (1993). In imposing that obligation, several courts have relied on statutes analogous to *N.J.S.A.* 2A:34–23. *See, e.g., In re Estate of Champagne,* 153 *Ill.App.*3d 560, 106 *Ill.Dec.* 561, 564, 505 *N.E.*2d 1352, 1355 (1987) (finding that state counterpart to Uniform Marriage and Divorce Act provided court with authority to impose college costs on parent's estate); *Guggenheimer v. Guggenheimer,* 99 *N.H.* 399, 112 *A.*2d 61, 63–64 (1955) (finding that state-support statute allows court to impose continuing obligation on estate); *Colombo v. Walker Bank & Trust Co.,* 26 *Utah* 2d 350, 489 *P.*2d 998, 999 (1971) (finding that state-support statute provided court with authority to bind father's estate for support obligation); *Morris v. Henry,* 193 *Va.* 631, 70 *S.E.*2d 417 (1952) (finding that state-support statute, in conjunction with other statutes, gave court authority to address matters of support when one party dies); *Scott v. Wagoner,* 184 *W.Va.* 312, 400 *S.E.*2d 556, 560 (1990)

(holding that state-maintenance statute provided courts with authority to bind estate of deceased parent when equity militates in favor of continuing support obligation).

In sum, *N.J.S.A.* 2A:34–23(a) authorizes courts to enter reasonable and equitable support orders, including orders for the education of children. Nothing in the statute prevents courts from entering such orders after the death of a parent. We conclude that the Family Part has the authority to enter an order directing Donald Kiken's estate to contribute to the cost of his son's college education.

## III.

Our assessment of the estate's obligation to make such a contribution begins with the support provisions in the divorce judgment, which incorporates the property-settlement agreement between Donald and Ellen. The college-expense portion of the agreement provides that Donald and Ellen Kiken "will pay for college for the infant child commensurate at the time with their income and assets." Notably, this provision is silent concerning the effect of either parent's death on their duty to provide David with a college education. Thus, the agreement did not provide that either parent's obligation would terminate on the death of the parent. The absence of a provision that the deceased parent's obligation terminates on death creates the inference that the obligated parent intended to bind his or her estate. *Flicker, supra,* 55 *N.J.Super.* at 279–81, 150 *A.*2d 688; *see also Newman v. Burwell,* 216 *Cal.* 608, 15 *P.*2d 511, 512–13 (1932) (indicating that child-support provision of property-settlement agreement in divorce decree survived as obligation on deceased parent's estate absent express intention to contrary); *Newhall v. Newhall,* 227 *Cal.App.*2d 800, 39 *Cal.Rptr.* 144, 147–49 (1964) (holding, where agreement was silent regarding effect of parent's death on child-support payments, estate was liable because father had not expressed intent that obligation would terminate on his death).

■ In this case, the agreement does not provide that Donald's obligation to contribute to David's college education would terminate on Donald's death. The alimony and life insurance provisions, however, address the contingency of death. For example, paragraph G provides that "if for any reason the life insurance policy is not in full force and effect or the named beneficiaries are not consistent with this agreement, [Donald's] estate shall be liable to [Ellen] or [David] in the specific amounts set forth herein." Paragraph D provides that alimony payments terminated on the "occurrence of the earliest event: November 1, 1985 or [Donald's] death." Moreover, paragraph E provides that "[i]n no event and under no circumstances shall [Ellen's] ... death terminate [Donald's] obligation to pay ... alimony." In brief, the parties contemplated that on Donald's death his estate would be relieved of his obligation to pay alimony, but not of its liability to Ellen or David if Donald failed to maintain the life insurance policy. The agreement does not state whether the estate would remain liable for Donald's obligation to contribute to David's education. Nothing indicates that Donald's obligation would not bind his estate.

■ We hold that under *N.J.S.A.* 2A:34–23 Donald's estate is bound by his obligation to contribute to the cost of David's college education. The record, however, does not provide an adequate basis to determine the extent of that obligation. Consequently, we remand the matter to the Family Part for a determination of the extent to which the estate should contribute to the cost of David's college education.

IV.

In denying Ellen's motion to substitute the executor in the divorce action, the lower courts proceeded on the assumption that Donald's estate was not obligated to contribute to David's college education. Hence, those courts did not consider whether Donald's executor may be substituted as the plaintiff in the divorce proceeding, if the estate is obligated to pay David's college expenses.

Because we conclude that the estate is so obligated, we now address the issue of the substitution of the executor.

 Orders for child support are generally subject to judicial review. *See Maquiling v. Estate of Maquiling,* 211 *N.J.Super.* 69, 510 *A.*2d 717 (Law Div.1986) (finding that court had continuing jurisdiction to enforce provisions of divorce decree against estate when husband died without complying with provision requiring him to name ex-wife as beneficiary of life insurance policy); *D'Angelo v. D'Angelo,* 208 *N.J.Super.* 729, 506 *A.*2d 851 (Ch.Div.1986) (allowing substitution of co-executors of estate in order to enforce final judgment of divorce where deceased had not satisfied obligations in property-settlement agreement). Moreover, courts possess broad equitable powers to accomplish substantial justice. *Weitzman v. Weitzman,* 228 *N.J.Super.* 346, 358–59, 549 *A.*2d 888 (App.Div.1988) (ordering remand to trial court seventeen years after divorce in order to determine college-expense obligation), *certif. denied,* 114 *N.J.* 505, 555 *A.*2d 623 (1989). Under the circumstances of this case, we find that the substitution of the executor is permissible. *See R.* 4:34–1(b) (stating that "[i]f a party dies and the claim is not thereby extinguished, the court shall on motion order substitution of the proper parties"). *Cf. Palko v. Palko,* 73 *N.J.* 395, 398, 375 *A.*2d 625 (1977) (finding that executor of deceased ex-husband should be substituted in matrimonial action); *Berlin v. Berlin,* 200 *N.J.Super.* 275, 279, 491 *A.*2d 63 (Ch.Div.1984) (finding that executrix of deceased wife's estate could be substituted as plaintiff in action to enforce provision of agreement in divorce decree).

V.

To conclude, on remand the Family Part should substitute the executor of Donald's estate as the plaintiff in the matrimonial action. In addition, the court should conduct further proceedings to determine the extent to which Donald's estate should contribute to the cost of David's college expenses.

The decision of the Appellate Division is reversed and the matter is remanded to the Family Part.

*For reversal and remandment*—Chief Justice PORITZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI and COLEMAN—6.