575 S.E.2d 242

In re the Marriage of Stephen
A. ROBINSON, Petitioner
Below, Appellee,

v.

Lynn E. COPPALA, Respondent
Below, Appellant.

No. 30464.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 9, 2002.

Decided Nov. 27, 2002.

Concurring Opinion of Justice
Starcher Dec. 10, 2002.

Nelson R. Bickley, Bickley & Jacobs, Charleston, for Appellant.

R. Joseph Zak, Charleston, for Appellee.

DAVIS, Chief Justice:

Lynne E. Coppala, appellant/defendant below (hereinafter referred to as "Ms. Coppala"), appeals from a divorce decree entered by the Circuit Court of Kanawha County. Ms. Coppala assigns error to the circuit court's decision to deny her alimony, and a determination that her former spouse, Stephen A. Robinson, appellee/plaintiff (hereinafter referred to as "Mr. Robinson"), is not required to maintain a life insurance policy for the parties four year old daughter.

Based upon the parties' arguments on appeal, the record designated for appellate review, and the pertinent authorities, we reverse the decision of the Circuit Court of Kanawha County.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The parties were married in Tennessee on February 7, 1997. One child was born of the marriage. Throughout the marriage, Ms. Coppala was employed as a law clerk with the circuit court of Kanawha County.[1] Mr. Robinson was employed by a furniture company in Tennessee. The parties maintained two households during the marriage. Ms. Coppala's primary residence was in West Virginia, while Mr. Robinson's primary residence was in Tennessee.[2]

On October 12, 1999, Mr. Robinson filed a divorce petition in West Virginia. He alleged irreconcilable differences as grounds for the divorce. Ms. Coppala filed an answer admitting irreconcilable differences. Hearings were held and evidence was taken before a family law master.[3] On February 22, 2001, the family law master filed a recommended decision with the circuit court. The two relevant recommendations made by the family law master were: (1) that Ms. Coppala receive alimony in the amount of $1,000.00 per month for 36 months; and (2) that Mr. Robinson maintain life insurance on himself under a policy that made his daughter an irrevocable beneficiary of $250,000.00.[4]

Mr. Robinson filed exceptions to both the alimony award as well as the requirement that he was to maintain his daughter as an irrevocable beneficiary of $250,000.00 from an existing life insurance policy.[5] The circuit court held a hearing on the matters and by order entered June 28, 2001, the circuit court adopted the recommendations of the family law master, except for the alimony and life insurance recommendations. The circuit court ruled that Mr. Robinson was required to pay no alimony, nor was he required to maintain any amount of life insurance listing his daughter as a beneficiary. From the circuit court's ruling, Ms. Coppala appeals.

## II.

## STANDARD OF REVIEW

■ We are called upon to review two recommendations by the family law master that were rejected by the circuit court. We pointed out in syllabus point 1 of *Stephen L.H. v. Sherry L.H.*, 195 W.Va. 384, 465 S.E.2d 841 (1995), that "[a] circuit court should review findings of fact made by a family law master only under a clearly erroneous standard, and it should review the application of law to the facts under an abuse of discretion standard." We also made the following observations in *Stephen L.H.*:

The standards of review . . . applying to the circuit court are the same standards for this Court. A court should review the record for errors of law; ensure the decision is supported by competent, material, and substantial evidence in the whole record; and ensure the findings and ultimate decision of a family law master are not clearly erroneous or an abuse of discretion. In reviewing the decisions of the circuit court, the scope of this Court's review is relatively narrow. Our role is limited to considering errors of law and making certain that the circuit court adhered to its

---

1. Due to Ms. Coppala's employment, all of the judges of the Circuit Court of Kanawha County recused themselves from this case. This Court appointed the Honorable O.C. Spaulding as a Special Judge to preside over this matter.

2. The parties had initially planned to buy a home in West Virginia, but the purchase never occurred.

3. The West Virginia Legislature has abolished the office of family law master and replaced it with the judicial office of family court judge. *See* W. Va.Code § 51–2A–1, *et seq.* To maintain consistency with the proceedings underlying this appeal, however, we will continue to use the phrase "family law master."

4. Mr. Robinson had purchased a $500,000.00 life insurance policy before the divorce proceeding was filed. The beneficiaries of the policy were Mr. Robinson's adult son from a previous marriage, and his daughter from the marriage resulting in this litigation.

5. See *supra* note 4.

statutory standard of review of factual determinations, that is, whether the family law master's findings are supported by substantial evidence and consistent with the law.

Where there is disagreement between the circuit court and the family law master, however, the substantial nature of the evidence supporting the circuit court's findings is further called into question, and this Court must examine the record with greater care. This is so even when that circuit court does not disagree with the family law master's factual findings, as such, but draws different inferences from the facts.

*Stephen L.H.*, 195 W.Va. at 393 n. 11, 465 S.E.2d at 850 n. 11.

## III.

## DISCUSSION

### A. Alimony

 Ms. Coppala first asserts that the circuit court committed error in rejecting the family law master's recommendation to award alimony payable at the rate of $1,000.00 per month for a period of thirty-six months. Under the statute applicable at the time of the proceedings in this matter, W. Va.Code § 48–2–15(I) (1999) (Repl.Vol.1999), a party was barred from receiving alimony in only three instances: (1) where the person has committed adultery; (2) where subsequent to the marriage the person has been convicted of a felony which is final; and (3) where a person has actually abandoned or deserted his or her spouse for six months.[6] In the present case, the parties were granted a divorce on the ground of irreconcilable differences. Nothing in the record suggests Ms. Coppala committed adultery, that she was convicted of a felony, or that she had

6. In 2001 the legislature rewrote and redesignated the statutes pertaining to alimony. *See* W. Va.Code § 48–8–101 *et seq.* These statutes took effect September 1, 2001, several months after the entry of the circuit court's order in the instant case. Thus, we will apply the law in place at the time of the divorce proceedings. *See* Syl. pt. 2, *Public Citizen, Inc. v. First Nat'l Bank in Fairmont*, 198 W.Va. 329, 480 S.E.2d 538 (1996) ("A statute that diminishes substantive rights or augments substantive liabilities should not be

actually abandoned or deserted Mr. Robinson for six months. Thus, we can quickly conclude that there is no statutory bar to an award of alimony.

 As a general proposition, "[a]bsent a finding of a statutory bar to alimony or a finding of substantial fault or misconduct on the part of the spouse seeking alimony, the determination of awarding alimony is to be based on 'the financial position of the parties.'" *Banker v. Banker*, 196 W.Va. 535, 541, 474 S.E.2d 465, 471 (1996) (quoting *Hickman v. Earnest*, 191 W.Va. 725, 726, 448 S.E.2d 156, 157 (1994)). In determining that alimony was appropriate in this case, the family law master turned to the 20 factors listed under W. Va.Code § 48–2–16(b) (1999) (Repl.Vol.1999), which was in effect at the time of the hearings in the present case. Although there were 20 factors under the statute, it is not necessary for a family law master to make specific findings as to each factor, but only as to those factors which are applicable and appropriate to the case. *See Burnside v. Burnside*, 194 W.Va. 263, 275 n. 30, 460 S.E.2d 264, 276 n. 30 (1995). Here, the family law master provided the following three statutory grounds for determining alimony at the rate of $1,000.00 per month for 36 months: (1) the disparity in the income of the parties;[7] (2) Ms. Coppala's custodial responsibilities for her daughter restricted her ability to increase her income by entering the private practice of law; and (3) the disproportionate use of Ms. Coppala's income to provide a domicile for the parties and their child before the divorce.

The circuit court concluded that "[t]he record ... sets forth sufficient evidence to support the Family Law Master's factor # 1 and factor # 3." However, the circuit court disagreed with the finding as to Ms. Coppala's

applied retroactively to events completed before the effective date of the statute (or the date of enactment if no separate effective date is stated) unless the statute provides explicitly for retroactive application.").

7. For the years 1997–1999, Ms. Coppala had an annual average income of $34,080.00. Mr. Robinson had an annual average income of $177,230.00.

ability to increase her income. The circuit court gave the following reasons for denying alimony: (1) Ms. Coppala "is a young, healthy attorney with an advanced Juris Doctor degree"; (2) Ms. Coppala's "past employment history does not indicate that [she] has a desire to enter into private practice"; (3) the marriage was short; (4) the parties lived separately most of the time; and (5) for six months while Ms. Coppala was pregnant Mr. Robinson supported the family.

■ Contrarily, Ms. Coppala contends that the circuit court created facts that were never litigated to support its ruling. That is, there was no evidence submitted regarding Ms. Coppala's health or her reasons for not entering the private practice of law. As such, it appears that the circuit court relied upon facts outside the record to support its decision. Based upon the record before us, the family law master's findings were not clearly erroneous. Our cases clearly hold that "a circuit court may not substitute its own findings of fact for those of a family law master merely because it disagrees with those findings." Syl. pt. 4, in part, *Stephen L.H. See also State ex rel. West Virginia Dep't of Health and Human Res. v. Carl Lee H.*, 196 W.Va. 369, 472 S.E.2d 815 (1996); *Banker v. Banker*, 196 W.Va. 535, 474 S.E.2d 465 (1996). In conclusion, we do not believe that a sufficient basis existed for the circuit court to disturb the family law master's findings in support of alimony. We therefore reverse the circuit court's ruling on alimony.

### B. Life Insurance

■ The next issue presented concerns the circuit court's rejection of the family law master's recommendation that Mr. Robinson, as the child support obligor, be required to maintain a life insurance policy, which he had purchased before the divorce proceeding was filed, that made his four year old daughter an irrevocable beneficiary to $250,000.00 of said policy.[8] The circuit court listed the following reasons for rejecting the recommendation: (1) no statutory authority existed to impose such a requirement; (2) the family law master made no findings as to the premium cost for maintaining the life insurance policy; and (3) the recommendation failed to make an income deduction in the child support calculation based upon premium payments.[9]

1. **Authority to require life insurance by a child support obligor.** The issue of requiring a child support obligor to maintain an existing life insurance policy, with the child as beneficiary, is one of first impression for this Court. The parties have pointed out that there is a split of authority among other jurisdictions that have addressed the issue. However, it appears that "a majority of jurisdictions ... permit the court to secure child support payments by ordering the obligor parent to maintain ... life insurance for as long as the support obligation remains in effect, generally until the children reach the age of majority." *Knowles v. Thompson*, 166 Vt. 414, 697 A.2d 335, 338 (1997). *See also Jordan v. Jordan*, 688 So.2d 839, 842 (Ala. Civ.App.1997) (concluding there was no abuse of discretion in requiring child support obligor to maintain life insurance); *In re Marriage of O'Connell*, 10 Cal.Rptr.2d 334, 337 (1992) (holding that in a divorce action the court can order a spouse to maintain life insurance to benefit a minor child); *Carroll v. Carroll*, 55 Conn.App. 18, 737 A.2d 963, 966 (1999) (finding an order of life insurance to very often be an appropriate and necessary component of a judgment of dissolution of marriage); *Bissell v. Bissell*, 622 So.2d

---

8. Mr. Robinson contends that the family law master's recommendation required him to maintain the life insurance policy after his daughter reached the age of majority. We do not interpret the recommendation to include such a requirement. The clear intent of the recommendation was to provide coverage only until the child attains the age of majority.

9. The circuit court also found that the life insurance recommendation was not necessary because of our holding in *Scott v. Wagoner*, 184 W.Va. 312, 400 S.E.2d 556 (1990). We indicated in the single syllabus of *Scott*, in part, that "[i]n a case involving child support, if compelling equitable considerations are present, ... a court has the authority to enforce the child support obligation as a lien against the deceased obligor's estate." Although *Scott* provides a mechanism for obtaining child support from the estate of a deceased obligor, *Scott* does not preclude utilization of other reasonable ways to achieve the same result. See further discussion of *Scott*, *infra*, in the body of this opinion.

532, 534 (Fla.Ct.App.1993) (affirming the trial court's direction that the husband maintain a life insurance policy as security for the payment of child support and alimony); *In re Estate of Downey*, 293 Ill.App.3d 234, 227 Ill.Dec. 265, 687 N.E.2d 339, 342 (1997) (holding that the court may require a spouse to maintain life insurance policy and name the child as irrevocable beneficiary of such policy); *In re Marriage of Mayfield*, 477 N.W.2d 859, 863 (Iowa Ct.App.1991) (finding no error in trial court's order that husband maintain his life insurance policy payable to his children); *Allison v. Allison*, 188 Kan. 593, 363 P.2d 795, 802 (1961) (ruling that court has the discretion to require father to maintain life insurance with child as beneficiary); *Leveck v. Leveck*, 614 S.W.2d 710, 712 (Ky.Ct.App.1981) (approving life insurance by child support obligor); *Nichols v. Tedder*, 547 So.2d 766, 769 (Miss.1989) (concluding that parent can be required to absorb insurance expenses and maintain a life insurance policy on his/her own life with the child named as beneficiary); *Thiebault v. Thiebault*, 421 N.W.2d 747, 748 (Minn.Ct.App.1988) (holding that court has authority to require child support obligor to obtain life insurance); *Jantzen v. Jantzen*, 257 Neb. 78, 595 N.W.2d 230, 232 (1999) (approving property settlement agreement requiring child support obligor to maintain life insurance with child as beneficiary); *Bailey v. Bailey*, 86 Nev. 483, 471 P.2d 220, 223 (1970) (holding that a court can require the father to maintain or purchase life insurance with the child as beneficiary); *Zaragoza v. Capriola*, 201 N.J.Super. 55, 492 A.2d 698, 700 (1985) (requiring father maintain life insurance with children as beneficiaries); *Kosovsky v. Zahl*, 257 A.D.2d 522, 684 N.Y.S.2d 524, 526 (1999) (approving life insurance policy of $750,000 to secure defendant's child support obligation); *Peters–Riemers v. Riemers*, 644 N.W.2d 197, 209 (N.D.2002) (holding that a court can require child support obligor maintain a life insurance policy until child is eighteen); *Yery v.*

*Yery*, 629 P.2d 357, 363 (Okla.1981) (approving life insurance by child support obligor); *Matter of Marriage of Willey*, 155 Or.App. 352, 963 P.2d 141, 144 (1998) (relying on statutory authority to require life insurance policy be procured); *Fender v. Fender*, 256 S.C. 399, 182 S.E.2d 755, 759 (1971) (finding court has discretion to require life insurance policy); *Young v. Young*, 971 S.W.2d 386, 392 (Tenn.Ct.App.1998) (observing that statute authorized court to require life insurance); *Englert v. Englert*, 576 P.2d 1274, 1276 (Utah 1978) (ruling that child support obligor was required to maintain life insurance until daughter reached eighteen); *In re Marriage of Sievers*, 78 Wash.App. 287, 897 P.2d 388, 398 (1995) (holding that trial court had authority to secure the child support with decreasing term life insurance); *Foregger v. Foregger*, 40 Wis.2d 632, 162 N.W.2d 553, 561 (1969) (finding that trial court has the power to order a father to continue in force life insurance policies for the benefit of his children).[10]

Both parties agree that there is no express statutory authority that specifically permits a court to require a child support obligor to maintain a life insurance policy with the child as the beneficiary. However, Ms. Coppala contends that the family law master had implied discretion to impose the requirement under W. Va.Code § 48–2–16(b)(20), which provision was in effect at the time of the divorce.[11] Under this "catchall" provision, a family law master may consider "[s]uch other factors as the court deems necessary or appropriate ... in order to arrive at a fair and equitable grant of ... child support[.]" W. Va.Code § 48–2–16(b)(20). We commented on this provision in syllabus point 3 of *Bridgeman v. Bridgeman*, 182 W.Va. 677, 391 S.E.2d 367 (1990), where we stated, in part, that the statute "is not a license to engage in creative jurisprudence, but it does require trial courts to consider the unusual

---

**10.** A minority of courts find that, without statutory authority, courts cannot require a child support obligor to obtain or maintain life insurance for the benefit of the child. *See Laws v. Laws*, 164 Colo. 80, 432 P.2d 632, 635 (1967); *Gardner v. Gardner*, 264 Ga. 138, 441 S.E.2d 666, 666 (1994); *Merchant v. Merchant*, 130 Mich.App.

566, 343 N.W.2d 620, 623 (1984); *Weiss v. Weiss*, 954 S.W.2d 456, 459 (Mo.Ct.App.1997).

**11.** This provision was deleted by the 2001 Acts of the Legislature, Regular Session, ch. 91. *See* note 6, *supra*.

facts of specific marriages."[12] We believe W. Va.Code § 48–2–16(b)(20) is broad enough to permit the recommendation made by the family law master. Moreover, even without the authority of W. Va.Code § 48–2–16(b)(20), our decision in *Scott v. Wagoner*, 184 W.Va. 312, 400 S.E.2d 556 (1990), supports a rule allowing a family law master the discretion to require a child support obligor to maintain a life insurance policy benefitting the obligor's child[ren].

*Scott* asked this Court to determine whether a child support obligation extended beyond the death of the obligor. Prior to *Scott*, our cases had held that child support payments terminated with the death of the obligor. We overruled prior decisions in *Scott* and held that "a court has the authority to enforce the child support obligation as a lien against the deceased obligor's estate." *Scott*, 184 W.Va. at 316, 400 S.E.2d at 560. The *Scott* Court sought to prevent the financial hardship that could befall a child should the child support obligor die.

Here, the family law master sought to assure that the child's standard of living would not diminish should Mr. Robinson suffer an untimely death. The remedy chosen by the family law master was consistent with, and an extension of, *Scott*. Indeed, it has been recognized that "[w]hen a trial court orders a parent to maintain a life insurance policy on his life for the child's benefit, the court is ensuring future support is available for the child in the event that the parent dies." *Capehart v. Capehart*, 705 N.E.2d 533, 538 (Ind.Ct.App.1999). Further, the life insurance mechanism chosen by the family law master provides greater security than *Scott*, because under *Scott* a child support obligor could die penniless, thereby leaving nothing for which a lien could be imposed.

■ In view of the foregoing, we hold that a child support obligor may be required to maintain or acquire a life insurance policy, with the obligor's child[ren] as beneficiary, when unusual facts of a particular case make it necessary or appropriate in order to arrive at a fair and equitable grant of child support. Having so held, we likewise hold when a child support obligor has been required to maintain or acquire a life insurance policy with the obligor's child[ren] as the beneficiary, generally the duration of the life insurance policy imposed upon the obligor may not be required to extend beyond the child[ren]'s age of majority.

■ In the instant case, the unusual facts that caused the family law master to make the life insurance recommendation, concerned the age of Mr. Robinson and his daughter. Mr. Robinson is age fifty-two, while his daughter is only four years old. As a result of Mr. Robinson's age and the tender age of his daughter, the family law master recommended the life insurance requirement as a way of assuring continued adequate support for the child in the event Mr. Robinson should die before she reached majority. We agree with the family law master that the age disparity made it appropriate to require Mr. Robinson to maintain the life insurance policy. We therefore reverse the circuit court's ruling on this issue.[13]

■ **2. Premium costs and income deduction.** The circuit court ruled that the family law master failed to make findings as to the premium cost for maintaining the life insurance policy, and further failed to make a deduction in the child support calculation based upon such premium payments. We agree with the circuit court that these issues should have been addressed by the family law master. This Court has recognized that, as an incident to child support, "all premium payments made by the [obligor] for ... insurance are to be deemed child support in such proportion as the court shall direct." *Kathy L.B. v. Patrick J.B.*, 179 W.Va. 655, 662, 371 S.E.2d 583, 590 (1988).

---

**12.** At the time of the decision in *Bridgeman*, the provision was codified at W. Va.Code § 48–2–16(b)(16).

**13.** Mr. Robinson has asked this Court to consider alternatives to the whole life policy, such as "decreasing term life insurance in an amount adequate in order to fund an annuity, which

would pay Court ordered monthly installment child support payments." We decline to address this issue in the first instance. However, on remand Mr. Robinson is not precluded from asking the lower tribunals to consider alternative life insurance plans.

Although we agree with the circuit court on the above issues, we disagree with the circuit court's use of those issues as a basis for rejecting the recommendation regarding life insurance. We have previously held that "if a circuit court believes a family law master failed to make findings of fact essential to the proper resolution of a legal question, it should remand the case to the family law master to make those findings." *Stephen L.H.*, 195 W.Va. at 396, 465 S.E.2d at 853. Consequently, we remand these issues for the family law master to address.[14]

## IV.

## CONCLUSION

In view of the foregoing, we find that Ms. Coppala is entitled to alimony as recommended by the family law master. We also find that Mr. Robinson is required to maintain a life insurance policy as recommended by the family law master. However, the family law master is required to make findings as to the premium cost for maintaining the life insurance policy, and is required to make a commensurate deduction in the child support. Consequently, we reverse the circuit court's ultimate disposition of the alimony and life insurance issues, and we remand this case for further disposition consistent with this opinion.

Reversed and Remanded.

Justice STARCHER concurs and reserves the right to file a concurring opinion.

STARCHER, Justice, concurring.

(Filed Dec. 10, 2002)

I concur with the majority opinion, but I write separately to clarify how family courts should address the issue of life insurance policies bought by divorced parents to protect their dependent children, and to clarify whether and how premiums for those policies should be allocated to reduce a child support obligation.

The majority opinion makes it clear that family law masters were, under the old statutory scheme, empowered to require a parent to maintain a life insurance policy to protect his or her children. Under the new statutory scheme, family courts have the same remedy at their disposal. In devising a child support order, family courts can consider the income-earning abilities of the parties, the costs of educating minor children, and the general standard of living of the parents and children during the marriage. *See W.Va. Code*, 48-6-301 [2001]. Family courts must consider those "factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of ... child support[.]" *W.Va.Code*, 48-6-301(b)(20) [2001].

When considering whether a parent should be required to maintain life insurance for a dependent child, family courts must consider that "children have a right to share in their natural parents' level of living," and that the child support ordered must be "related, to the extent practicable, to the standard of living that children would enjoy if they were living in a household with both parents present." *W.Va.Code*, 48-13-102 [2001]. "[A] family ... court should examine what a reasonable, similarly-situated parent would have done had the family remained intact or, in cases involving a nonmarital birth, what the parent would have done had a household been formed." *Porter v. Bego*, 200 W.Va. 168, 176, 488 S.E.2d 443, 451 (1997).

In other words, family courts have flexibility to craft remedies that reflect the pre- and post-divorce circumstances of the parties, so that the final child support order ensures that the children can share in both parents' standard of living. If a parent—particularly a parent of means—would have provided life insurance to protect his or her child's standard of living and future opportunities in the event of the parent's death while the parties were married, then the parent may be required to provide a similar level of life insurance after the dissolution of the marriage.

---

14. In addressing the issue of premium payments for the life insurance by Mr. Robinson, the family law master must not consider the full premium for the $500,000.00 policy. Instead, the family law master should consider only the premium cost for maintaining a $250,000.00 life insurance policy.

The big question not fully addressed in the majority opinion is, should the parent who is required or permitted to purchase life insurance receive a dollar-for-dollar deduction from his or her share of the child support obligation for any life insurance premiums paid? The majority opinion leaves this question open, and remanded the instant case back to the family court to craft a remedy and make findings. I believe the majority should have given the family court some guidance.

I can conceive of numerous situations where a parent should receive little or no deduction from a child support obligation for life insurance premiums. For instance, there is the hypothetical, absurd, and yet very real possibility that a parent would buy a life insurance policy with premiums equal to or greater than the current child support obligation. Similarly, a parent could choose to buy life insurance without consulting the other parent, without being required to do so by the family court, or without any real need (such that the policy benefits are so high in relation to current income that the policy is merely a gamble to enrich the beneficiaries, not replace lost income). In these situations, it would be unfair to markedly reduce the current child support obligation to pay the life insurance premiums.

Furthermore, if the parent purchases a "whole life" insurance policy, or some other similar insurance product, that actually accrues value that the parent can borrow against or recover in the future, then the parent should not receive a dollar-for-dollar reduction in the current child support obligation for the premiums paid. It would be patently unfair for a parent to pay premiums on a whole life policy to avoid paying current child support, and then after the child turns 18, cash in the policy, thereby financially benefitting from this action. In such situations, the minor child does receive some inchoate current benefit by receiving the protection of the insurance policy, a benefit that a family court can consider in calculating child support. But the child should not be deprived of a substantial measure of current child support so that the parent can receive a future windfall when the policy is cashed in or borrowed against years down the road.

In its final child support award, a family court may craft a child support award that will accommodate "the needs of the child or children or the circumstances of the parent or parents." *W.Va.Code*, 48–13–702 [2001]. This means a family court may, in its discretion, require a parent to purchase a life insurance policy, and may credit all, some or none of the premiums against the parent's child support obligation.

I otherwise respectfully concur with the majority opinion.