265 N.J. Super. 128 (1993)
625 A.2d 590
SARAH E. DECEGLIA, PLAINTIFF-RESPONDENT,
v.
ESTATE OF GARY DOUGLAS COLLETTI; AUDREY COLLETTI, ADMINISTRATRIX OF THE ESTATE OF GARY DOUGLAS COLLETTI; AUDREY COLLETTI, INDIVIDUALLY; AND LORI ANN COLLETTI, DEFENDANTS-APPELLANTS, AND LARRIN COLLETTI; THE PRUDENTIAL INSURANCE COMPANY OF AMERICA; STATE OF NEW JERSEY, DEPARTMENT OF THE TREASURY, DIVISION OF PENSIONS, PUBLIC EMPLOYEES' RETIREMENT SYSTEM; GENERAL MOTORS ACCEPTANCE CORPORATION; JOHN DOES 1-20, ABC CORPORATIONS 1-20 AND ABC PARTNERSHIPS 1-20 (THE LAST 60 NAMES BEING FICTITIOUS, REPRESENTING NATURAL PERSONS, CORPORATIONS, PARTNERSHIPS OR OTHER ENTITIES); AND MEDICAL EXAMINER, MORRIS COUNTY, NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted March 23, 1993.
Decided June 8, 1993.
*131 Before Judges DREIER, SKILLMAN and VILLANUEVA.
Charles J. Mysak, attorney for appellants.
Nolan & Ehler, attorneys for respondent (Edward J. Nolan, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
This appeal involves competing claims to three life insurance policies. The decedent, Gary Colletti, owned a whole life policy with a face value of $25,000 and two group policies provided through his employment with an aggregate value slightly in excess of $50,000. In June 1981 the decedent designated his mother, defendant Audrey Colletti, as the beneficiary of the whole life policy, and in March 1987 he designated his mother and sister, defendant Lori Ann Colletti, as joint beneficiaries of the group policies.
Subsequent to these designations, decedent began a serious romantic relationship with the plaintiff Sarah DeCeglia. In May 1990 plaintiff and decedent began living together and shortly thereafter plaintiff became pregnant. Decedent recognized the expected child as his own and planned to marry plaintiff in June 1991. However, on December 13, 1990, decedent suddenly and unexpectedly died. The only substantial assets owned by decedent at the time of his death were the three insurance policies.[1] Less than a month after decedent's death, plaintiff gave birth to the child decedent had fathered.
Shortly before his own death, one of decedent's close friends died in a hunting accident. As a result, decedent became concerned *132 about providing for plaintiff and his soon-to-be-born child if something were to happen to him. Consequently, he communicated with a law firm about the preparation of a will under which plaintiff would be the beneficiary. He also spoke to the insurance agent who sold him the whole life policy about designating plaintiff as the beneficiary and purchasing additional coverage. However, the decedent's unexpected death occurred before a will could be drafted and before he was able to meet with his insurance agent to effectuate a change in his beneficiary designation.
Plaintiff filed this suit in the Chancery Division against Audrey and Lori Ann Colletti, as the designated beneficiaries under the insurance policies, the Prudential Insurance Company, as issuer of the policies,[2] the decedent's estate, and various other parties who are not involved at this stage of the proceeding. The complaint asserted among other things that plaintiff was entitled to the proceeds of the life insurance policies or, alternatively, that the decedent's estate was liable for the support of his child.
The trial court conducted a one-day trial in which plaintiff, decedent's insurance agent, his attorney and a paralegal employed by the attorney, all testified to decedent's expressions of intent to make plaintiff the beneficiary of his insurance policies. The trial court found based on this evidence that the decedent intended to make plaintiff the beneficiary under all three policies. In addition, the court concluded that, under Vasconi v. Guardian Life Ins. Co. of Am., 124 N.J. 338, 590 A.2d 1161 (1991), it was appropriate to effectuate decedent's intent even though it had not been formalized by the execution of a change of beneficiary form or other writing.
The decedent's estate and his mother and sister, as the named beneficiaries under the insurance policies, appeal from the judgment in plaintiff's favor, arguing that since decedent took no action during his lifetime to change the beneficiary designations, *133 the named beneficiaries enjoy a vested right to the insurance proceeds. Plaintiff argues that the trial court properly effectuated the decedent's intent to change his beneficiary designations by awarding her the insurance proceeds. In the alternative, plaintiff argues that she is entitled to the insurance proceeds to satisfy decedent's child support obligations imposed under the New Jersey Parentage Act, N.J.S.A. 9:17-38 to -59.
We conclude that decedent's verbal expressions of intent to change the beneficiary designations under his life insurance policies did not change those designations. However, we also conclude that decedent's obligation to support his child is enforceable against his estate and that the proceeds of his insurance policies are available to satisfy this obligation. Therefore, we reverse the part of the judgment which awards the proceeds of the insurance policies to plaintiff, but remand to the trial court to allow plaintiff to pursue claims for child support from the proceeds of the policies.

I
The traditional rule regarding change of beneficiary designations under a life insurance policy is that "... the interest of the designated beneficiary ... is a vested property right, payable if he survives the insured, which can be divested only by a change of beneficiary in the mode and manner prescribed by the [policy]." Metropolitan Life Ins. Co. v. Woolf, 138 N.J. Eq. 450, 454-55, 47 A.2d 340 (E. & A. 1946); accord Prudential Ins. Co. of Am. v. Swanson, 111 N.J. Eq. 477, 482, 162 A. 597 (E. & A. 1932); New York Life Ins. Co. v. Estate of Hunt, 150 N.J. Super. 271, 274, 375 A.2d 672 (App.Div.), certif. denied, 75 N.J. 28, 379 A.2d 259 (1977). Thus, ordinarily "[a] demonstrated intention to change beneficiaries is insufficient if not executed in the manner prescribed in the policy for effecting such a change." Id. at 275, 375 A.2d 672; accord Prudential Ins. Co. of Am. v. Swanson, supra, 111 N.J. Eq. at 482, 162 A. 597; Gerhard v. The Travelers Ins. Co., 107 N.J. Super. 414, 422, 258 A.2d 724 (Ch.Div. 1969). However, in *134 Haynes v. Metropolitan Life Ins. Co., 166 N.J. Super. 308, 313, 399 A.2d 1010 (App.Div. 1979), we held that a change of beneficiary designation may be effected by "substantial compliance" with the method prescribed in the policy. Consequently, we concluded that a written request of an insured to change his beneficiary designations from his estranged wife to other relatives was effective, even though not accompanied by the policies themselves as required by the contracts of insurance, because the estranged wife had control of the policies and refused to relinquish them. In reaching this conclusion, we stated that "an insured will be released from a strict observance of the terms of the policy if the court can be convinced that the insured made every reasonable effort to effect a change of beneficiary." Ibid.; see also Prudential Ins. Co. of Am. v. Mantz, 128 N.J. Eq. 480, 484, 17 A.2d 279 (Ch.), aff'd o.b., 130 N.J. Eq. 385, 22 A.2d 241 (E. & A. 1941); Prudential Ins. Co. of Am. v. Swanson, supra, 111 N.J. Eq. at 481, 162 A. 597. The "substantial compliance" rule has been described in substantially similar terms by leading treatises in the field of insurance, 5 Couch on Insurance, §§ 28.65, 28.66 (Rhodes rev. 1984); 2A John Alan Appleman and Jean Appleman, Insurance Law and Practice, §§ 1008, 1021 (Appleman rev. 1966), and by courts of other jurisdictions. See, e.g., IDS Life Ins. Co. v. Estate of Groshong, 112 Idaho 847, 736 P.2d 1301 (1987); Capital Life Ins. Co. v. Porter, 719 S.W.2d 908 (Mo. App. 1986).
In addition, in Vasconi v. Guardian Life Ins. Co., supra, 124 N.J. at 346, 590 A.2d 1161, the Court held that when divorcing parties enter into a property settlement agreement which purports to settle "all questions pertaining to their respective interests in distribution of the marital assets," the agreement "should be regarded as presumptively revoking" the designation of the former spouse as the beneficiary of any life insurance policies. The Court stated that in this context "[a] beneficiary designation must yield to the provisions of a separation agreement expressing an intent contrary to the policy provision." Id. at 347, 590 A.2d 1161; see also Conforti v. Guliadis, 128 N.J. 318, 324-25, 608 A.2d 225 (1992).
*135 The trial court read Vasconi broadly to change prior New Jersey law requiring "substantial compliance" with the beneficiary designation of an insurance policy and instead to establish "the proposition that the real polestar should be the intent of the insured owner." Moreover, the trial court indicated that the intent to change a beneficiary designation can be established solely from a decedent's verbal expressions of intent without formalization in any kind of writing.
We believe that the trial court's reading of Vasconi was overly broad. Vasconi involved the interpretation of a formally executed agreement between the policyholder and beneficiary which purported to settle "all questions pertaining to their respective interests in distribution of the marital assets," which presumably included the insurance policy. The present case does not involve any comparable written agreement between the policyholder and beneficiaries, or any form of written communication from the policyholder to the insurer expressly requesting a change in his beneficiary designations. Instead, decedent simply expressed an intent to change his beneficiary designations, which he was told would require the execution of insurance company forms to effectuate. Such a verbal expression of intent does not constitute substantial compliance with the provisions of insurance policies requiring execution of change of beneficiary forms. See Prudential Ins. Co. of Am. v. Swanson, supra, 111 N.J. Eq. at 482, 162 A. 597 ("A mere unexecuted intention to change the beneficiary is not sufficient.").
The part of Vasconi which suggests that principles derived from the law of wills should be applied in determining the continuing effectiveness of an insurance beneficiary designation, provides additional support for our conclusion that a mere verbal expression of intent to change a beneficiary designation is ineffective. 124 N.J. at 343-45, 590 A.2d 1161. Although testamentary intent is a necessary condition for admission of an instrument to probate, In re Will of Smith, 108 N.J. 257, 262, 528 A.2d 918 (1987), it is not sufficient. The decedent also must have executed either a *136 formal will in conformity with N.J.S.A. 3B:3-2 or a holographic will in conformity with N.J.S.A. 3B:3-3. In re Estate of Peters, 107 N.J. 263, 526 A.2d 1005 (1987). A mere verbal expression of testamentary intent not formalized by any writing of the decedent is ineffective. See 2 Page on Wills § 19.5 (Bowe, Parker rev. 1960) ("Statutes in every state now require both wills and testaments ... to be in writing."); 5 New Jersey Practice, Wills and Administration § 49, at 188 (Alfred C. Clapp) (rev. 3d ed. 1982) ("A will must be in writing."); cf. In re Will of Smith, supra, 108 N.J. at 265, 528 A.2d 918 ("[T]he doctrine of probable intent is available only to interpret, but not to validate, a will."). Likewise, a will may be revoked solely in the manner prescribed by the Wills Act, N.J.S.A. 3B:3-13 to -16; In re Santelli, 28 N.J. 331, 342-43, 146 A.2d 449 (1958).
The decisions of other jurisdictions also support our conclusion that a mere verbal expression of an intent to change a beneficiary designation is ineffective. See, e.g., Jaudon v. Prudential Ins. Co. of Am., 279 F.2d 730, 733 (6th Cir.1960); Shaw v. Loeffler, 796 P.2d 633 (Okla. 1990); Androvette v. Treadwell, 73 N.Y.2d 746, 536 N.Y.S.2d 43, 532 N.E.2d 1271 (1988); Maxwell v. Britt, 171 Ga. App. 230, 319 S.E.2d 88 (1984); Hoess v. Continental Assurance Co., 130 Ind. App. 562, 164 N.E.2d 125, 129 (1960); see generally 5 Couch on Insurance, supra, §§ 28.75, 28.76. Contra Empire Gen'l Life Ins. Co. v. Silverman, 135 Wis.2d 143, 399 N.W.2d 910 (1987); Bell v. Parker, 563 So.2d 594 (Miss. 1990). In Maxwell v. Britt, supra, the court stated:
[A]lthough the insured expressed an intention to change the designated beneficiary, he did not take any affirmative action to accomplish that desire. He never executed any document to effectuate, nor did he make any other attempt to comply with, the procedure set forth in the policy. Thus, the insured did not do substantially all that was required of him, or all that he could do, to effect a change. His mere expression of intention was insufficient for that purpose.

[319 S.E.2d at 90.]
Similarly, the decedent in this case only expressed an intent to change the beneficiary designations on his insurance policies, without taking any formal action to implement that intent. Decedent's *137 verbal expressions of intent did not constitute substantial compliance with the provisions of his policies and thus did not effectuate a change of beneficiaries.

II
The Parentage Act imposes a child support obligation upon the parent of a child born out of wedlock which may survive the parent's death. Specifically, N.J.S.A. 9:17-45(c) provides:
The death of the alleged father shall not cause abatement of any action to establish paternity, and an action to determine the existence or nonexistence of the parent and child relationship may be instituted or continued against the estate or the legal representative of the alleged father.
In Koidl v. Schreiber, 214 N.J. Super. 513, 520 A.2d 759 (App.Div. 1986), we construed this subsection and N.J.S.A. 9:17-53 to impose a child support obligation which may continue after death. We found support for this conclusion in Grotsky v. Grotsky, 58 N.J. 354, 361, 277 A.2d 535 (1971), which held in the context of divorce that "... where the circumstances equitably call for such action, the court may enter a support order for minor children to survive their father's death." We saw "... no reason why the same should not be true of a support order outside the context of a divorce." Koidl v. Schreiber, supra, 214 N.J. Super. at 515, 520 A.2d 759. Indeed, a construction of N.J.S.A. 9:17-45(c) which accorded a child born out of wedlock more limited rights to support than would be provided a child whose parents had divorced could raise serious constitutional problems. See Clark v. Jeter, 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988); Mills v. Habluetzel, 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed. 770 (1982); Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978). Therefore, the estate of a deceased parent may be required to pay support in accordance with N.J.S.A. 9:17-53(c), (d) and (e). Since defendants now concede decedent was the father of plaintiff's child, plaintiff is entitled to seek support from his estate.
The more difficult question is whether the proceeds of decedent's life insurance policies are includable in his estate for the purpose of satisfying plaintiff's child support claim. The *138 proceeds of life insurance policies payable to a named beneficiary are generally exempt from claims of a decedent's creditors and do not become part of the decedent's estate. Thus, N.J.S.A. 17B:24-6(a) provides:
If a policy of insurance, ... is affected by any person on his own life, ... in favor of a person other than himself, ... then the lawful beneficiary, ... shall be entitled to its proceeds and avails against the creditors and representatives of the insured....
To the same effect, N.J.S.A. 17B:24-9(a) provides:
A policy of group life insurance ... or the proceeds thereof payable ... to the beneficiary thereunder, shall not be liable, either before or after payment, to be applied by any legal or equitable process to pay any debt or liability of such insured individual....
However, our courts have held that the basic purpose of statutory provisions which exempt the proceeds of insurance policies and related benefits from the claims of creditors is to protect beneficiaries from commercial creditors. Consequently, such provisions do not necessarily foreclose the claims of those to whom the insured or other claimant owes a duty of support. Fischer v. Fischer, 13 N.J. 162, 93 A.2d 568 (1953); Steller v. Steller, 97 N.J. Super. 493, 235 A.2d 476 (App.Div. 1967); Hirko v. Hirko, 166 N.J. Super. 111, 398 A.2d 1353 (Ch.Div. 1979); see generally 2A Appleman and Appleman, Insurance Law and Practice, supra, § 1342.
In Fischer v. Fischer, supra, the Court held that the former wife of a retired police officer could enforce her right to alimony out of his pension benefits even though a section of the governing pension statute provided that "[a]ll pensions granted under this chapter shall be exempt from execution, garnishment, attachment, sequestration or other legal process." The Court reasoned that:
[I]t is abundantly clear that the policy of the immunity provision is to shield the pensioner against the coercive remedial and executorial processes available to creditors.... [Alimony] is not comprehended in the terms of the exemptive clause of the statute under review, designed as it is to secure the pension against the claims of third persons as a means of support for the pensioner and his family.
....

*139 [T]he essential purpose of such immunity from process is the protection not only of the pensioner, but of his family as well, from destitution and the need for public relief, and, absent a clear and definite expression contra, the provision will not be read to enable the husband to claim the full benefit of the pension as against his dependent wife and children, and thus to subvert the laws enjoining upon the husband the performance of this basic obligation of the marriage state.

[13 N.J. at 167-68, 93 A.2d 568.]
See also Thiel v. Thiel, 41 N.J. 446, 451-52, 197 A.2d 354 (1964); Cleveland v. Board of Trustees, 229 N.J. Super. 156, 159-61, 550 A.2d 1287 (App.Div. 1988).
Similarly, in Hirko v. Hirko, supra, the court concluded that the exemption of life insurance proceeds from creditor's claims provided by N.J.S.A. 17B:24-6, one of the statutory provisions involved in this appeal, did not bar the insured's former wife from seeking to levy upon the cash surrender value of his policy to satisfy a judgment for alimony arrearages. The court noted that "the insurance policies are the only assets of plaintiff available for the support of defendant in this State" and concluded that "the statutory exemption created in N.J.S.A. 17B:24-6, must yield to the sequestration and levy by defendant as an alimony judgment creditor." 166 N.J. Super. at 113-14, 398 A.2d 1353. Cf. Travelers Ins. Co. v. Johnson, 579 F. Supp. 1457, 1460-63 (D.N.J. 1984) (where, pursuant to separation agreement, father was to maintain life insurance policy designating children of first marriage as beneficiaries but failed to do so, children had a "superior equitable interest" in the proceeds of a policy designating the father's second wife as the beneficiary).
The courts of other jurisdictions have also held that statutory exemptions of life insurance proceeds from the claims of creditors do not bar a claim by a former wife or child to whom the decedent-policyholder owed a duty of support. See, e.g., Abrego v. Abrego, 812 P.2d 806, 808 (Okla. 1991); Aetna Life Ins. Co. v. Bunt, 110 Wash.2d 368, 754 P.2d 993 (1988). Thus, in Aetna Life Ins. Co. v. Bunt, supra, a policyholder agreed as part of a marital separation agreement to name his minor children as irrevocable beneficiaries of his life insurance but after remarrying changed the beneficiary *140 designation to his new wife. When the policyholder died, his new wife argued that statutes exempting the proceeds of insurance policies from the claims of creditors barred the children's claims to the insurance proceeds. In rejecting this argument, the Supreme Court of Washington stated:
[T]he claims for child support, like those for spousal maintenance, are not equivalent to the claims of "creditors" to which the insurance proceeds exemption statute is directed. The basis for child support is the natural obligation of a parent to support his or her children; the validity of their claim does not depend upon either contract or judgment. The purpose of exemption statutes ... is to protect the unfortunate debtor and save him a means of supporting his family.
....
The duty of parents to provide support for their minor children is fundamental to the wellbeing of our society. This duty is, as the nineteenth century English jurist Blackstone described, "a principle of natural law." 1 W. Blackstone, Commentaries § 447 (quoted in Grotsky v. Grotsky, 58 N.J. 354, 277 A.2d 535 (1971)). The obligation is not a debt as contemplated by the insurance proceeds exemption statute but is instead an obligation growing out of the parental status and public policy, ...

[754 P.2d at 998-99.]
We conclude for similar reasons that N.J.S.A. 17B:24-6(a) and N.J.S.A. 17B:24-9(a) do not exempt the proceeds of the life insurance policies owned by decedent from plaintiff's child support claim. The Parentage Act expresses our fundamental public policy that parents of children born out-of-wedlock are obligated to provide support, and N.J.S.A. 9:17-45(c) recognizes that that obligation may continue even after the parent's death. This case presents compelling circumstances for the enforcement of this obligation. Decedent acknowledged the child as his own, an acknowledgment confirmed by post-mortem paternity tests, and he expressed a strong desire to provide for the child in the event of his death. Moreover, insofar as the record reveals, plaintiff and her expected child were the decedent's only surviving dependents. Therefore, in the words of Grotsky v. Grotsky, supra, 58 N.J. at 361, 277 A.2d 535, this is a case "where the circumstances equitably call for [entry of] a support order ... to survive [the] father's death."
*141 Accordingly, we reverse the part of the judgment of the trial court awarding plaintiff the proceeds of the decedent's life insurance policies but remand the matter to allow plaintiff to pursue a claim for child support from the insurance proceeds. Upon remand, plaintiff may renew her application under N.J.S.A. 9:17-54 for an award of the costs of establishing decedent's paternity of the child.
NOTES
[1] The decedent's estate also was entitled to the return of decedent's pension contributions, which totalled $1,530.24. Plaintiff asserted a claim to these contributions, which defendants contested. Although the judgment on appeal adjudicates plaintiff's right to those contributions, defendants have not presented any argument relating to that part of the judgment.
[2] Prudential deposited the proceeds of the three policies into court and was then dismissed from the suit.