709 A.2d 1387

MARIA PAULINO v. GUSTAVO RAMIREZ, SR.

Superior Court of New Jersey
Chancery Division
Family Part
Middlesex County

Decided January 9, 1998.

*Robert H. Goodwin, Garces & Grabler,* for plaintiff.

*Gustavo Ramirez, Sr.,* defendant pro se.

BERMAN, J.S.C.

### Introduction

This non-dissolution matter arises on motion by the Plaintiff, Maria Paulino (hereinafter "Plaintiff") for an order compelling defendant. Gustavo Ramirez, Sr. (hereinafter "Defendant") to name the parties' son. Gustavo Ramirez, Jr., born May 5, 1992, as the sole, irrevocable beneficiary of an existing $100,000.00 life insurance policy which Defendant owns and on which he is the named insured. The case raises an issues which has received limited analysis in case law: whether the court can order the non-custodial parent to maintain life insurance for the benefit of the child in a non-dissolution case, and *whether the court can order such relief when there is no existing support order.*

## Facts

The court bases its factual understanding of this case on the Notice of Motion, brief, and supporting certification filed by Plaintiff on November 18, 1997; Defendant has filed no opposing papers. Plaintiff certified that the parties had a relationship from 1986 to July 1993, and that this relationship produced their son, Gustavo Ramirez, Jr., born May 5, 1992 (Pf.Cert.Pp.1–2). The parties, according to the Plaintiff, began living together at least as early as 1988 and purchased a home some time before the birth of the child. The Defendant later abandoned Plaintiff and their child in July 1993 and moved in with his mother.

Plaintiff certified that the Defendant has never been subject to a support order (implying that Plaintiff never applied for support.) Because there have been no prior actions between these parties, there also has been no adjudication of paternity, which this court takes as conceded given Defendant's lack of opposition. Plaintiff further certified that Defendant purchased a $100,000.00 life insurance policy in 1988 during the period of the parties' cohabitation, but that Defendant's mother, Mrs. Pura Santos, is presently named as beneficiary.

The Plaintiff has certified without documentation that Defendant has been diagnosed with Acquired Immune Deficiency Syndrome (AIDS), and fears that he may expire within the month. The Plaintiff therefore asks this court to order Defendant to name Gustavo Ramirez, Jr., as sole irrevocable beneficiary of the $100,-000.00 life insurance policy and to name Plaintiff, Maria Paulino, as trustee. Plaintiff also asks that the order operate to name the child as the beneficiary until the policy is amended. Plaintiff bases her position on the statutes that allow the court to order and to provide security for child support awards in dissolution cases (*N.J.S.A.* 2A:34–23 and 2A:34–25) and on the child custody statute (*N.J.S.A.* 9:2–4).

This court orders Defendant to name the child sole irrevocable beneficiary of this life insurance policy with Plaintiff as trustee, for the reasons set forth below, based on the intent of the New Jersey

Parentage Act, *N.J.S.A.* 9:17–38 to 9:17–59 and on the legal duty of parents to provide financial support for their children.

## Legal Analysis

Parents have a clearly enforceable legal duty to provide financial support for their minor children. *Kiken v. Kiken,* 149 *N.J.* 441, 447, 694 *A.*2d 557 (1997). The evolving duty of support has been enhanced by the enactment of statutes. (*Grotsky v. Grotsky,* 58 *N.J.* 354, 356, 277 *A.*2d 535 (1971). The court in *Koidl v. Schreiber,* 214 *N.J.Super.* 513, 515, 520 *A.*2d 759 (App.Div.1986) explained that this duty is statutory and does not exist at common law. The Legislature and the courts have made clear that they make no distinction between children of a marriage and children born out of wedlock in establishing and protecting the rights of children to parental support. *Kiken,* 149 *N.J.* at 447, 449, 694 *A.*2d 557; *State v. Clark,* 58 *N.J* . 72, 84–85, 275 *A.*2d 137 (1971); *Essex Cty. Div. of Welfare v. Walker,* 223 *N.J.Super.* 464, 467, 538 *A.*2d 1308 (App.Div.1988) (refusing to allow parent to pay only nominal support for his children born out of wedlock while paying guidelines level support for his legitimate children). Anything less would reek of inequity and clearly never pass constitutional muster.

Even though support to children born in wedlock is controlled by the divorce statutes, *N.J.S.A.* 2A:34–1 (no short title listed), particularly *N.J.S.A.* 2A:34–23, –24, and –25; and support to children born out of wedlock is governed by the Parentage Act, particularly *N.J.S.A.* 9:17–53, the courts have drawn examples freely from the statutes in dissolution and in non-dissolution cases to establish a remedy for the support of a child. *Kiken,* 149 *N.J.* at 447, 694 *A.*2d 557. The purpose of the New Jersey Parentage Age, adopted effective May 21, 1983, was "to establish the principle that regardless of the marital status of the parents, all children and parents have equal rights with respect to each other...." Assembly Judiciary, Law, Public Safety and Defense Committee Statement to Senate, No. 888–L.1983, c. 17; *N.J.S.A.* 9:17–40;

*Wingate v. Estate of Ryan,* 149 *N.J.* 227, 233, 693 *A.*2d 457 (1997); *Vasquez v. Bolduc,* 212 *N.J.Super.* 455, 457, 515 *A.*2d 500 (App. Div.1986).[1] The provisions of the divorce and parentage statutes relevant to this case are those that allow the court to establish security, in the form of bonds, liens, trusts, insurance policies, and the like, for court-ordered child support obligations. In practice courts have fashioned a variety of support arrangements irrespective of the language of the statutes. For instance, *N.J.S.A.* 2A:34–23, which governs child support pendente lite and post judgment in dissolution cases provides

> Pending any matrimonial action ..., or after judgment of divorce or maintenance, ... the court may make such order ... as to the care, custody, education and maintenance of the children, ... as the circumstances of the parties and the nature of the case shall render fit, reasonable and just, and require reasonable security for the due observance of such orders, *including, but not limited to, the creation of trusts or other security devices to assure payment of reasonably foreseeable medical and educational expense.*

> [N.J.S.A. 2A:34–23.]

---

[1] We note that there has been no proceeding to establish paternity in this case under *N.J.S.A.* 9:17–38 *et seq.* Paternity may be established by consent of the parties, pursuant to *N.J.S.A.* 9:17–48; by court ordered blood or genetic testing and the subsequent entry of an order establishing paternity, pursuant to *N.J.S.A.* 9:17–51 and 9:17–53; by default order entered following the putative father's failure to attend a properly noticed paternity hearing or trial, pursuant to *N.J.S.A.* 9:17–52.1; or, most relevant to this case, by presumption, if the man "receives the [minor] child into his home and openly holds out the child as his natural child," pursuant to *N.J.S.A.* 9:17–43a(4); or, by presumption, if the man "provides support for the [minor] child and openly holds out the child as his natural child," pursuant to *N.J.S.A* 9:17–43a(5). *N.J.S.A.* 9:17–43a(5) applies to a lesser extent, as Plaintiff has certified that Defendant has provided only sporadic support for the child. *N.J.S.A.* 9:17–43a(4) may create a presumption of paternity in this case, as Plaintiff certifies that Defendant, child and she resided together from the child's birth in May 1992 to Defendant's departure in July 1993. The presumption of paternity is rebutted "in an appropriate action only by clear and convincing evidence." *N.J.S.A.* 9:17–43b. The statute further provides that "[t]he presumption is rebutted by a court order terminating the presumed father's paternal rights or by establishing that another man is the child's natural or adoptive father." *N.J.S.A.* 9:17–43b. As Defendant has not responded to Plaintiff's application, he has not attempted to rebut any presumption of paternity.

Even prior to the entry of the 1988 amendment to the statute, emphasized above, courts interpreted "reasonable security" to include ordering the non-custodial parent to acquire or to maintain life insurance for the benefit of the child. *Grotsky*, 58 *N.J.* at 361, 277 *A.*2d 535 (that the court may order the obligor to maintain his life insurance to secure his child support obligation to his minor children after his death); *Meerwarth v. Meerwarth*, 128 *N.J.Super.* 285, 319 *A.*2d 779 (Chan Div.1974), *aff'd*, 137 *N.J.Super.* 66, 347 *A.*2d 804 (App.Div.1975), *aff'd*, 71 *N.J.* 541, 544, 366 *A.*2d 979 (1976) (dictum) (that a court may order an obligor post judgment to cooperate in obtaining life insurance to secure his alimony obligation); *Davis v. Davis*, 184 *N.J.Super.* 430, 439–440, 446 *A.*2d 540 (App.Div.1982) (that the obligor must provide limited life insurance or a trust to secure alimony payments). *N.J.S.A.* 2A:34–24, which provides for spousal and child support in a separate maintenance action (legal separation), authorized the court to make a child support order, to impose a priority lien for arrears, or to compel the obligor to "post a bond or other guarantee for [arrears] and for present and future support and maintenance...." *N.J.S.A.* 2A:34–24. Even though this statute is part of the divorce act, it was amended effective October 5, 1985 and effective April 24, 1987 to replace "spouse" with "obligor/obligee" consonant with federal law that caused the lien provision to apply irrespective of the marital status of the parties (Senate Committee on Children's Services Statement, Senate, No. 2335–L.1987). *N.J.S.A.* 2A:34–25, which provides that permanent alimony terminates upon the remarriage of the obligee or upon the death of the obligor, also provides:

> Nothing in this act shall be construed to prohibit a court from ordering either spouse to maintain life insurance for the protection of the former spouse *or the children of the marriage* in the event of the payer spouse's death.
>
> [*N.J.S.A.* 2A:34–25, as amended effective September 1, 1988, (emphasis added).][2]

The New Jersey Supreme Court in *Jacobitti v. Jacobitti*, 135 *N.J.* 571, 577, 641 *A.*2d 535 (1994) noted the distinction between

---

[2] There is no statutory equivalent for a child born out of wedlock.

*N.J.S.A.* 2A:34–23, which provided for trusts as security, and *N.J.S.A.* 2A:34–25, which provided for life insurance but was silent as to trusts, and observed that the Legislature could have made the language of the two statutes congruent, as they were amended at the same time. *Jacobitti,* 135 *N.J.* at 579, 641 *A.2d* 535. Because the Court deemed the obligor, whose alimony payments sustained a disabled spouse, too aged to qualify for life insurance and opined that life insurance consonant with the letter of the statute would be prohibitively expensive, the Court fashioned an equitable resolution. Finding the obligor *uninsurable* under *N.J.S.A.* under 2A:24–35, the Court ordered the obligor to establish a trust to secure the obligor's alimony payments to his former wife in the event of his death. *Jacobitti,* 135 *N.J.* at 582, 641 *A.*2d 535.

Finally *N.J.S.A.* 9:17–52 provides that the judgment or order regarding paternity

> [c]   may contain any other provision . . . concerning the duty of support, . . . the furnishing of bond or other security for the payment of the judgment. . . .
>
> d.   Support judgments or orders ordinarily shall be for periodic payments. . . .
> . . . . [T]he purchase of an annuity may be ordered in lieu of periodic payments of support.
>
> [*N.J.S.A.* 9:17–53.]

The statute thereafter sets forth factors congruent with those set forth in *N.J.S.A.* 2A:34–23a(1)–(9) for the court to consider in establishing a child support award.

Interpreting this legislation, courts have exercised as broad ingenuity in establishing support for children born out of wedlock as for children born of a marriage and have borrowed freely from the examples of dissolution cases to provide for children in non-dissolution cases. In both dissolution and non-dissolution cases the analytical hurdle to establishing security devices for the support of children was determining whether the court had the legal or equitable authority to make awards that effectively provided for child support after the death of the obligor. The Court in *Grotsky,* 58 *N.J.* at 361, 277 *A.*2d 535 (1971), reasoning that the financial need and dependency of a minor child do not abate upon

the death of the obligor-parent, determined that the "comprehensive terms of *N.J.S.A.,* 2A:34–23" should be liberally applied so that, where equity warrants, the court

> may enter a support order for minor children to survive their father's death and may direct the father to maintain his insurance, naming the minor children as beneficiaries, for the purpose of securing due fulfillment of the support order during their minority.
>
> [*Grotsky,* 58 *N.J.* at 361, 277 *A.*2d 535.]

Relying on *Grotsky* and on the observation that the child support provisions of the divorce statute, *N.J.S.A.* 2A:34–23 are "not unlike" those of the Parentage Act, *N.J.S.A.* 9:17–53, the court in *Koidl,* 214 *N.J.Super.* at 515, 520 *A.*2d 759 determined that the child support order in a non-dissolution case also survives the death of the obligor, in a manner that was left to the trial court to decide, the Appellate Division having simply determined that the *ex parte* termination of the child's benefits on the date of the obligor's death was unjust. *Id.* at 516–517, 520 *A.*2d 759. The court in *Koidl* relied also on *N.J.S.A.* 9:17–45(c), which provides that a paternity action does not abate on the death of the putative father, but that the child may continue his or her claim against the decedent's estate, as further evidence that the financial needs of the child born out of wedlock are deemed to survive the death of the parent. *Koidl,* 214 *N.J.Super.* at 516, 520 *A.*2d 759. The Chancery Division in *Zaragoza v. Capriola,* 201 *N.J.Super.* 55, 59–60, 492 *A.*2d 698 (Chan.Div.1985) simply ordered the non-custodial parent to pay weekly child support on behalf of a child born out of wedlock, to maintain life insurance on behalf of that child in an amount equal to that which he had provided for children of a prior marriage, and to maintain medical and dental insurance for that child.

Pursuant to the Parentage Act and the equitable powers of the court to order parental support for minor children, the court has made the obligor's life insurance proceeds or the assets of the obligor's estate available to the minor child born out of wedlock to cohabitants, where there was no pre-existing support order because none was warranted. *DeCeglia v. Estate of Colletti,* 265

*N.J.Super.* 128, 137, 625 *A.2d* 590 (App.Div.1993). That principle represented an important extension of the support statutes, which explicitly provide for trusts, insurance policies, liens as devices to secure *existing* support orders.

In *DeCeglia* unmarried cohabitants were expecting a child when the man died unexpectedly. *Id.* at 131, 625 *A.2d* 590. The court established at trial that the decedent had intended to name the woman-survivor as beneficiary of all his life insurance polices but failed to do so before his demise. The man's mother and sisters were still listed as beneficiaries at his death. Although the court found that the man's verbal intent did not serve to change the beneficiary designations, the court determined that the post-humous child had a claim against the decedent's estate for support, which would include the proceeds of the insurance policy for that purpose. *Id.* at 137 and 140, 625 *A.2d* 590. The court relied on *Grotsky, Koidl,* and the Parentage Act, including *N.J.S.A.* 9:17–45(c), for the principle that the parent's estate may be responsible for the support of the child after the parent's death, and *N.J.S.A.* 9:17–53, to establish the child's claim to these funds. *Id.* at 137, 625 *A.2d* 590. The court observed that to construe the Parentage Act so that it provide more restricted rights to a child born out of wedlock than to a child born of the marriage might raise constitutional issues, specifically the Equal Protection Clause. *Id.* at 137, 625 *A.2d* 590, *citing Clark v. Jeter,* 486 *U.S.* 456, 463–464, 108 *S.Ct.* 1910, 1915–1916, 100 *L.Ed.2d* 465 (1988), and other federal cases. The usual statutory prohibition against including life insurance proceeds in the decedent's estate (*N.J.S.A.* 17B:24–9(a)) was designed to protect the beneficiary against the claims of a commercial creditor but did not "necessarily foreclose the claims of those to whom the insured or other claimant owes a duty of support." *DeCeglia,* 265 *N.J.Super.* at 138–140, 625 *A.2d* 590.

The court in *DeCeglia* made clear that the parent's duty to support his children is not confined in the first instance to a periodic support order enhanced by enforcement devices but may directly reach other assets. The court in the instant case finds no

reason to distinguish the rights of the child of estranged parents from the rights of the child whose parents cohabit. The court deems that the result in *DeCeglia* allows the court to enter an order compelling the non-custodial parent of the child born out of wedlock to name the child as beneficiary on the parent's life insurance policy, even absent a periodic support order.

In *DeCeglia* the decedent's confirmed oral promise to change the beneficiary status on the life insurance policy did not serve to effect this change. *Id.* at 133, 625 *A.*2d 590. But where a Judgment of Divorce ordered the obligor to name the child of the marriage as beneficiary on the life insurance provided to him through his employment, and the obligor died without complying, the Judgment served as an equitable assignment of at least a portion of the insurance proceeds to the child named as beneficiary therein. *Della Terza v. Estate of Della Terza,* 276 *N.J.Super.* 46, 49–50, 647 *A.*2d 180 (App.Div.1994) In *Della Terza,* as the face value of the policy was equal to the decedent's annual salary, the child had a claim to that portion of the insurance proceeds representing the value of the policy at the time of the Judgment of Divorce, plus any increased value arising from salary enhancements attributable only to the cost of living (not to any job change or promotion since the Judgment of Divorce), with the remainder to the beneficiary whom the decedent had named, contrary to the Judgment of Divorce. For the reasons set forth above, an order entered in a non-dissolution case to compel the obligor to name the child of the relationship as a beneficiary on his insurance policy should have no less authority to operate as an equitable assignment of the proper share of those proceeds, should the obligor expire without complying, than if the obligor were ordered to do so pursuant to a Judgment of Divorce. In *Black v. Walker,* 295 *N.J.Super.* 244, 263, 684 *A.*2d 1011 (App.Div.1996) the court concluded that the trial court had the equitable authority to order the decedent-father's estate to furnish college costs for his child born out of wedlock, relying on a *Newburgh* analysis (*Newburgh v. Arrigo,* 88 *N.J.* 529, 443 *A.*2d 1031 (1982) and on the education provisions of the divorce statute, *N.J.S.A.* 2A:34–23(a)(5), as well

as on the Parentage Act. The court made this finding in the interest of equity, even though the parties, the child's parents, had signed a support agreement that provided that the father's obligation to the out-of-wedlock child would terminate on his death. *Black*, 295 *N.J.Super.* at 249, 684 *A.*2d 1011.

## Conclusion

For the reasons set forth above, this Court orders the Defendant, Gustavo Ramirez, Sr., to name Gustavo Ramirez, Jr., beneficiary of Defendant's existing insurance policy in the face amount of $100,000.00.[3] The court cannot cause this order to change the beneficiary status on the policy without Defendant's compliance; but, for the reasons set forth above, should Defendant succumb without complying, this order will operate to give the child an equitable claim against Defendant's estate, which shall include the proceeds of this insurance policy for the purpose of the child's claim.

---

[3] This raises another question: what if Plaintiff is wrong about the continuous existence of this policy from 1988? Can this order operate to give the child a claim to proceeds of a policy or to other assets acquired after the end of the parties' relationship? That is not clear from *Della Terza*, although *Black* suggests that it would. Certainly, common sense and basic fairness do dictate that.