NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3189-13T4

EVANISA S. FOX,

     Plaintiff-Appellant,

v.

LINCOLN FINANCIAL GROUP,

     Defendant,

and

MARY ELLEN SCARPONE,

     Defendant-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **February 24, 2015**
>
> **APPELLATE DIVISION**

Submitted January 28, 2015 - Decided February 24, 2015

Before Judges Alvarez, Waugh, and Carroll.

On appeal from the Superior Court of New Jersey, Chancery Division, General Equity Part, Morris County, Docket No. C-156-13.

Michael Patrick Carroll, attorney for appellant.

Fox Rothschild LLP, attorneys for respondent (Benjamin R. Kurtis, on the brief).

The opinion of the court was delivered by

CARROLL, J.A.D.

    This appeal involves competing claims to a life insurance policy (the policy) issued by defendant Lincoln Financial Group

(Lincoln) to decedent, Michael G. Fox.[1] Following Michael's death, his wife, plaintiff Evanisa Fox,[2] and his sister, defendant Mary Ellen Scarpone, both sought to collect the policy proceeds. On February 6, 2014, the trial court dismissed Evanisa's complaint, effectively awarding the proceeds to Scarpone, who was the designated beneficiary under the policy. On appeal, Evanisa urges us to adopt a "bright-line" rule that marriage creates a "presumptive right" to a spouse's life insurance benefits, thereby revoking any contrary premarital beneficiary designation made by the deceased spouse. We reject Evanisa's broad public policy argument, and hold that her marriage to Michael, without more, is insufficient to defeat Scarpone's beneficiary status.

The facts are straightforward. Michael purchased the policy in 1992. Initially, he designated his then-wife, Gail, as primary beneficiary, and his brother, Kenneth, as contingent beneficiary. Michael and Gail subsequently divorced, and in 1996 Michael executed an insurance company form designating

---

[1] Because decedent and plaintiff share a common surname, we refer to them by their first names in this opinion for purposes of clarity. In doing so, we intend no disrespect.

[2] Evanisa is alternatively spelled Evanisia on certain documents included in the record.

Scarpone as sole beneficiary.[3]  This change comported with the terms of the policy, which expressly provides:

> **Beneficiary** — At any time prior to the death of the Insured, the Owner may name or change a revocable beneficiary.  . . .  A change of the Owner or beneficiary must be made in writing.  To be binding on the Company, the change must be signed by the Owner and any irrevocable beneficiary and must be filed at the Home Office.

Michael married Evanisa, a Brazilian national, on July 28, 2012.  On September 26, 2012, Michael executed a Form I-130 petition to sponsor Evanisa's citizenship application.  Along with the petition, Michael executed a Form I-864 Affidavit of Support[4] in which he agreed to support his wife at 125 percent of the poverty level.  This support obligation expressly terminated upon Michael's death, and the I-864 form specifically informed him "Therefore, if you die, your [e]state will not be required

---

[3] Chubb Life Insurance Company originally issued the policy and the change of beneficiary form.  At some point prior to the commencement of this action Lincoln assumed the policy.

[4] The Immigration and Nationality Act forbids admission to the United States of any alien who is likely at any time to become a public charge.  8 U.S.C.S. § 1182(a)(4)(A); see also 8 U.S.C.S. §§ 1601(2)(A), (5).  This provision is implemented by requiring a person who sponsors an alien for admission to execute an affidavit of support.  8 C.F.R. §§ 213a.2(a), (b); see also 8 U.S.C.S. § 1182(a)(4)(C)(ii).  The affidavit, the contents of which are specified in 8 U.S.C.S. § 1183a, is in the form of a contract between the sponsor and the United States, 8 C.F.R. § 213a.2(d), called Form I-864.

to take responsibility for [Evanisa's] support after your death."

On November 9, 2012, before the citizenship petition was approved, Michael died in a work-related automobile accident. It is undisputed that, prior to his death, Michael did not submit a new change of beneficiary form to Lincoln, nor did he make any effort to designate Evanisa as beneficiary under the policy.

Evanisa filed this suit against Scarpone, the designated beneficiary, and Lincoln, as issuer of the policy.[5] The complaint asserted among other things that Michael's marriage to plaintiff effected a change in beneficiary as a matter of law, and sought to declare Evanisa the sole beneficiary of the policy.

In lieu of filing an answer, Scarpone moved to dismiss the complaint for failure to state a claim. Evanisa opposed the motion, and cross-moved for summary judgment. In a September 4, 2013 certification, Evanisa averred:

> Upon our marriage, we commenc[ed] living together as husband and wife. My husband represented to me that he would, as conditions permitted, ensure that my name went on various accounts, that I was named the beneficiary of his life insurance

---

[5] Lincoln deposited the proceeds of the policy into court and was then dismissed from the suit.

policies and other, similar programs. My understanding, though, is that to become a holder of most joint accounts, certainly any bank accounts, one must have a Social Security number. And, although I had applied, with my husband's assistance, for a Social Security number, I had not yet received one as of the date of his death.

. . . .

[It] will be extremely difficult for me to survive without his financial support. The death benefit is modest in any event. It comes to slightly more than two years of the salary my husband was earning at the time of his death. Other than the insurance, the [e]state is very modest.

In a reply certification,[6] Evanisa added that she receives workers' compensation benefits attributable to Michael's work-related accidental death. She also expressed concern that Michael's estate might become liable for a student loan of approximately $38,000 that Michael guaranteed for Scarpone's daughter.

The trial court heard oral argument on both motions on February 6, 2014. Analogizing to <u>Vasconi v. Guardian Life Ins. Co. of Am.</u>, 124 <u>N.J.</u> 338 (1991), Evanisa argued that the court should apply a "bright[-]line, <u>Vasconi</u>-type test." Counsel posited that, where an insured designates someone else as a

---

[6] The certification included in Evanisa's appendix is unsigned and undated. However, Scarpone does not question its authenticity.

policy beneficiary, and the insured thereafter marries, "there should be a presumption that [the insured] intended to revoke that [earlier policy] designation." Counsel conceded, however, that he was "[un]able to find a single New Jersey case" supporting this proposition.

In an oral opinion, the court examined well-settled case law, which requires some objective showing that the deceased intended to change the policy's beneficiary. The judge determined that the complaint failed to allege facts suggesting that such a showing could be made. He also found no duty obligating Michael to support Evanisa following his death. The judge then issued implementing orders denying Evanisa's motion for summary judgment, and dismissing her complaint with prejudice.

On appeal, Evanisa presents a singular point for our consideration:

> POINT ONE: PLAINTIFF, AS THE SPOUSE OF THE DECEDENT, IS ENTITLED TO THE PROCEEDS OF THE INSURANCE POLICY

Stated differently, Evanisa argues that the appeal presents "a very simple question: should . . . the law of insurance contracts[] reflect the changed circumstances attendant to marriage in the same way it reflects changed circumstances with respect to divorce?" Again analogizing to <u>Vasconi</u>, she contends

that, "just as divorce presumptively disqualifies a former spouse from receiving anything, marriage ought to result in a presumption that she receives everything." Applied to the facts of this case, she asserts that Scarpone should have the burden of establishing that Michael's failure to change the beneficiary designation was intentional.

The facts in this matter are "essentially undisputed and the judge's decision was based upon the legal conclusions he drew from those facts. We owe no deference to the judge's interpretation of the law." Whitfield v. Bonanno Real Estate Grp., 419 N.J. Super. 547, 552 (App. Div. 2011) (citing Atl. Mut. Ins. Co. v. Hillside Bottling Co., 387 N.J. Super. 224, 231 (App. Div.), certif. denied, 189 N.J. 104 (2006)).

Generally, an insured can change the beneficiary on an insurance policy only by notifying the insurer in accordance with the policy, or by substantially complying with the policy's provisions.

> The traditional rule regarding change of beneficiary designations under a life insurance policy is that . . . the interest of the designated beneficiary . . . is a vested property right, payable if he [or she] survives the insured, which can be divested only by a change of beneficiary in the mode and manner prescribed by the [policy]. Thus, ordinarily, [a] demonstrated intention to change beneficiaries is insufficient if not

> executed in the manner prescribed in the policy for effecting such a change.
>
> [DeCeglia v. Estate of Colletti, 265 N.J. Super. 128, 133 (App. Div. 1993) (alterations in original) (citations and internal quotation marks omitted).]

This general rule may be modified where there is "substantial compliance" with the method prescribed in the policy to change the beneficiary. See Haynes v. Metro. Life Ins. Co., 166 N.J. Super. 308, 313 (App. Div. 1979). "Substantial compliance" requires an insured to make "every reasonable effort to effect a change of beneficiary." Ibid. Thus, it is well-established that only under limited circumstances will a designated beneficiary be denied the right to receive the insurance proceeds. Czoch v. Freeman, 317 N.J. Super. 273, 285 (App. Div.), certif. denied, 161 N.J. 149 (1999).

Our Supreme Court recognized a limited exception to the general rule in Vasconi, where decedent's ex-wife and decedent's estate made competing claims to his life insurance policy. Previously, decedent and his wife had divorced, and had executed a property settlement agreement that provided for a mutual waiver of all claims, including claims against each other's estate. Nonetheless, at the time of decedent's death, his ex-wife remained the named beneficiary of his policy. On these facts, the Court held that:

> [W]hen spouses divorce and enter into a property-settlement agreement that purports to settle "all questions pertaining to their respective interests in distribution of the marital assets," the proceeds of a life-insurance policy subject to the lifetime control of one spouse should ordinarily be considered as encompassed within the terms of the settlement agreement. Such a settlement agreement and waiver of interest in the property of the deceased spouse should be regarded as presumptively revoking the nonprobate transfer of the insurance proceeds.
>
> [Vasconi, supra, 124 N.J. at 346.]

On appeal, as she did before the trial court, Evanisa relies heavily on Vasconi. She argues that this case represents the "reciprocal" of Vasconi. Thus, like the event of divorce in Vasconi, marriage should trigger a presumption that each spouse thereby intends to make the other the primary beneficiary under any life insurance policy, absent evidence of contrary intent.

In analogizing to Vasconi, Evanisa misstates and broadens its holding. The Court in Vasconi did not glean from the mere fact of the insured's divorce an intent to change the beneficiary designation on his insurance policy. Rather, the court held that "[a] beneficiary designation must yield to the provisions of a separation agreement expressing an intent contrary to the policy provision." Id. at 347.

We had occasion to revisit the manner in which a beneficiary change can be accomplished in DeCeglia. There the

decedent, Colletti, had previously designated his mother and sister as beneficiaries on various life insurance policies. DeCeglia, supra, 265 N.J. Super. at 131. Subsequent to those beneficiary designations, Colletti began cohabiting with plaintiff DeCeglia, who became pregnant soon thereafter. Ibid. Colletti became concerned about providing for DeCeglia and his child should something happen to him. Consequently, he communicated with a law firm about the preparation of a will under which DeCeglia would be the beneficiary. He also spoke with his insurance agent about designating DeCeglia as the beneficiary and purchasing additional coverage. However, Colletti died unexpectedly before a will could be drafted or he was able to meet with his insurance agent to effectuate a change in his beneficiary designation. Id. at 131-32.

On these facts, the trial court concluded that Colletti intended to make DeCeglia the beneficiary on the policies. Id. at 132. In addition, it concluded that, under Vasconi, it was appropriate to effectuate decedent's intent even though it had not been formalized by the execution of a change of beneficiary form or other writing. Ibid.

In reversing that portion of the trial court's judgment, we concluded that Colletti's verbal expressions of intent to change

A-3189-13T4

the beneficiary designations under his life insurance policies were ineffective. Id. at 133. We reasoned:

> The trial court read Vasconi broadly to change prior New Jersey law requiring "substantial compliance" with the beneficiary designation of an insurance policy and instead to establish "the proposition that the real polestar should be the intent of the insured owner." Moreover, the trial court indicated that the intent to change a beneficiary designation can be established solely from a decedent's verbal expressions of intent without formalization in any kind of writing.
>
> We believe that the trial court's reading of Vasconi was overly broad. Vasconi involved the interpretation of a formally executed agreement between the policyholder and beneficiary which purported to settle "all questions pertaining to their respective interests in distribution of the marital assets," which presumably included the insurance policy. The present case does not involve any comparable written agreement between the policyholder and beneficiaries, or any form of written communication from the policyholder to the insurer expressly requesting a change in his beneficiary designations. Instead, decedent simply expressed an intent to change his beneficiary designations, which he was told would require the execution of insurance company forms to effectuate. Such a verbal expression of intent does not constitute substantial compliance with the provisions of insurance policies requiring execution of change of beneficiary forms.
>
> [Id. at 135.]

In the second part of our opinion, we determined that Colletti had an obligation to pay child support under the New

Jersey Parentage Act, N.J.S.A. 9:17-38 to -59. Thus, we allowed DeCeglia to pursue a claim for child support from the proceeds of the policies. Id. at 133, 137-41.

In the present case, relying on her interpretation of Vasconi, Evanisa urges us to expand existing law to create a "bright-line" rule that an insured who marries thereby intends to designate his or her spouse as beneficiary on his or her life insurance policy, thus usurping any prior beneficiary designation. We decline to do so, and would instead leave so drastic a change to the Legislature. In this regard, we note that the Legislature has acted in N.J.S.A. 3B:3-14 to provide that divorce automatically revokes a disposition of property made by a divorced individual to his former spouse in a governing instrument which, by definition, includes an insurance policy. N.J.S.A. 3B:1-1. It could similarly pass legislation granting presumptive beneficiary rights to a spouse upon marriage should it determine to do so.

The Legislature has also enacted N.J.S.A. 3B:5-15, which provides an intestate share to a surviving spouse unintentionally omitted from a premarital will, based on the rebuttable presumption that the decedent would have provided for him or her. Notably, however, the omitted spouse statute applies only to wills, and does not extend to nonprobate assets

such as a life insurance policy.  We presume that in enacting the statute, the Legislature was aware of this distinction.  In any event, it is within the province of the Legislature to expand the statute to provide an omitted spouse with an intestate share of life insurance proceeds, or to enact some other appropriate statutory remedy.

Having rejected plaintiff's public policy argument, we next conclude that, under the facts presented, Evanisa did not establish that Michael clearly demonstrated the intent to comply with the insurer's procedures for changing the beneficiary.  We agree with the trial judge that the manifestation of any such intent here is far less compelling than the unsuccessful efforts made by the decedent in DeCeglia to effectuate such a change. The record is totally devoid of evidence that Michael attempted to do so.  Instead, the facts point in an opposite direction. They suggest that Michael, knowing that he was obliged to inform the insurer to effect a change in beneficiary, and having done so in the past, failed to take any steps toward that end. Further, there is no evidence that Michael sought to make or change a will to provide for Evanisa, or designated her as a

joint owner on his bank accounts.[7] All we have is Evanisa's statement that Michael orally represented to her that he would, "as conditions permitted," make such provisions for her. "[M]ere verbal expression of an intent to change a beneficiary designation is ineffective." DeCeglia, supra, 265 N.J. Super. at 136.

Finally, Evanisa cites Michael's commitment to support her in sponsoring her citizenship application as justification for receiving the policy proceeds. However, the trial court correctly found that Michael was under no duty to support Evanisa or provide a life insurance policy for her, as such support obligation terminated upon his death pursuant to the express terms of the Form I-864 support affidavit.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7] Evanisa's appendix includes bank statements issued during the brief period of the marriage, which are solely in Michael's name.