**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2208
_____

GUARDIAN LIFE INSURANCE COMPANY OF AMERICA

v.

TINA M. GONNELLA; JOSEPH D. GONNELLA

Joseph D. Gonnella,
Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-17-cv-12097)
District Judge: Hon. Madeline C. Arleo
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 23, 2020

Before: AMBRO, MATEY, and ROTH *Circuit Judges*.

(Opinion Filed:  March 12, 2020)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge.*

Arleen Gonnella passed away in 2017, and this is a dispute about the benefits owed under her life insurance policy. The District Court found Arleen's daughter to be the rightful beneficiary, and entered judgment in her favor. We agree, and will affirm.

## I. BACKGROUND

The late Arleen Gonnella held a policy of whole life insurance issued through Guardian Life. Following Arleen's death, her daughter, Tina Gonnella, and ex-husband, Joseph Gonnella, separately claimed to be the rightful beneficiary to the policy.[2] Hoping to stay out of the argument, Guardian Life began an action under Federal Rule of Civil Procedure 22, seeking interpleader relief and a release from any liability, leaving the task of sorting out the beneficiary dispute to the District Court. The District Court obliged. First, the court entered an order requiring Guardian Life to deposit the proceeds of the policy with the court. Second, it entered a consent judgment providing interpleader relief, and dismissed Guardian Life from the action. The District Court then turned to the dispute between Tina and Joseph.

The policy names Joseph as the primary beneficiary. But he and Arleen divorced in 2012, and executed a Martial Settlement Agreement (the "MSA"), dividing up their marital assets. Relevant here, the MSA states, "[a]ll . . . life insurance policies . . . in the name or possession of the Wife not otherwise identified herein shall be the sole and separate

---

[2] Because the parties share a surname, we refer to them by their first names in this opinion for clarity.

2

property of the Wife, and the Husband waives any interest therein." (App. at 99.)[3] The MSA also says that any modification to its terms must be written and signed by both parties.

Tina argues that since Joseph waived his interest in Arleen's Guardian Life policy, under the MSA she was entitled to the death benefit as the policy's contingent beneficiary. The District Court agreed. Applying New Jersey law, it granted summary judgment to Tina and ordered the Clerk to pay the entirety of the death benefit to her. Joseph appealed from that final order.

## II. JURISDICTION

We asked the parties to address whether the District Court properly exercised jurisdiction over the matter after Guardian Life was dismissed. *See Ricketts v. Att'y Gen.*, 897 F.3d 491, 493 n.2 (3d Cir. 2018) ("As always, we have jurisdiction to determine our own jurisdiction.") (citing *United States v. Ruiz*, 536 U.S. 622, 628 (2002)). Federal Rule 22 provides that "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." Fed. R. Civ. P. 22(a). An interpleader action proceeds "in two distinct stages." *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009). First, "the court determines whether the interpleader complaint was properly brought and whether to discharge the stakeholder from further liability to the claimants." *Id.* Second, "the court determines the respective rights of the claimants to the interpleaded funds." *Id.*

---

[3] The parties agree that the MSA does not otherwise address the Guardian Life policy.

3

But Federal Rule 22 does not confer jurisdiction; an action for relief brought under the rule must be supported by statutory jurisdiction. *See* 7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1710 (3d ed. 2019). Here, the District Court had jurisdiction under 28 U.S.C. § 1332 because complete diversity existed between Guardian Life, a citizen of New York, and the Gonnellas, both citizens of New Jersey, and because the policy has a life insurance benefit above $75,000. And since there was jurisdiction at the time of filing, jurisdiction remained even after Guardian Life was dismissed. *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (per curiam) (1991); *see also Grupo Dataflux v. Atlas Glob. Grp., L.P.,* 541 U.S. 567, 570 (2004) (noting that the "time-of-filing rule is hornbook law"). As a result, because Joseph Gonnella appeals from a final order granting summary judgment to Tina Gonnella, we have jurisdiction under 28 U.S.C. § 1291.

### III. TINA GONNELLA IS THE RIGHTFUL BENEFICIARY OF THE INSURANCE PROCEEDS

Joseph raises two arguments on appeal. First, he argues that the MSA did not address insurance beneficiaries, only insurance policy ownership. Second, he argues that he and Arleen later modified the MSA through an oral agreement restoring his beneficiary status under the insurance policy. At a minimum, he reasons, these issues raise genuine disputes of material fact, making summary judgment premature. We address each in turn.

Joseph concedes that he waived any "ownership" interest in the Guardian Life policy under the MSA. But, he argues, that doesn't alter his designation as primary beneficiary under the policy which, he claims, falls outside the scope of the MSA. That conclusion is incorrect under both the law of contract, and the law of marital settlements.

4

Start with the "basic contract principle[]" that we interpret the terms of an MSA to give the "words of an agreement . . . their ordinary meaning" so that when "the parties' intent is plain and the language is clear and unambiguous, [we] must enforce the agreement as written, unless doing so would lead to an absurd result." *Woytas v. Greenwood Tree Experts, Inc.*, 206 A.3d 386, 392 (N.J. 2019) (internal quotation marks and citations omitted). And the MSA states that Joseph "waives *any* interest" in Arleen's insurance policies, ownership or otherwise. (App. at 99) (emphasis added). An "interest" means "[a] legal share in something; all or part of a legal or equitable claim to or right in property." Black's Law Dictionary (10th ed. 2014). So by waiving his right to "any interest," Joseph waived his beneficiary interest in the policy.[4]

New Jersey law governing the revocation of probate and non-probate transfers by divorce produces the same result. *See* N.J. Stat. Ann. § 3B:3–14. That law provides that "a divorce . . . revokes any revocable[] dispositions or appointment of property made by a divorced individual to his former spouse in a governing instrument[.]" *Id.* § 3B:3–14(a)(1)(a). And the statute continues: "[i]n the event of a divorce . . . provisions of a governing instrument are given effect as if the former spouse . . . disclaimed all provisions revoked by this section[.]" *Id.* § 3B:3–14(a)(2); *see also Fox v. Lincoln Fin. Grp*, 109 A.3d 221, 227 (N.J. Super. Ct. App. Div. 2015) (noting that "the Legislature . . . acted in

---

[4] New Jersey law accords the same: "when spouses divorce and enter into a property-settlement agreement that purports to settle all questions pertaining to their respective interests in distribution of the marital assets, the proceeds of a life-insurance policy subject to the lifetime control of one spouse should ordinarily be considered as encompassed within the terms of the settlement agreement." *Vasconi v. Guardian Life Ins. Co. of Am.*, 590 A.2d 1161, 1165 (N.J. 1991) (internal quotation marks omitted).

[§] 3B:3-14 to provide that divorce automatically revokes a disposition of property made by a divorced individual to his former spouse in a governing instrument which, by definition, includes an insurance policy."). So the auto-revocation statute severed Joseph's interest as primary beneficiary of the policy.

Finally, Joseph maintains that an oral agreement followed, and modified, the signed MSA. And he notes that § 3B:3-14(a)'s default rule applies "[e]xcept as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce or annulment." *Id.* § 3B:3-14(a). So, he argues, this oral agreement defeats § 3B:3-14(a)'s application because it serves as a "contract relating to the division of the marital estate made between the divorced individuals . . . after the . . . divorce." *Id.*

Joseph concedes that no one other than he and Arleen was privy to this spoken promise. So he bolsters his position by noting that he and Arleen enjoyed an amicable relationship after divorce, as evidenced by his continued involvement in her financial affairs, their mutual concern for each other during health emergencies, and her request to share the Gonnella family burial plot. He also asserts that neither he nor Arleen ever removed each other as primary beneficiary under their respective life insurance policies (including the Guardian Life policy), and that his signed affidavit, which he submitted to the District Court, supports his recollection of their oral agreement.

But all this extrinsic evidence still fights the terms of the MSA, which allows for only a written modification signed by both parties. And because the MSA addresses the disposition of any life insurance policies held by Joseph or Arleen, § 3B:3-14 cannot nullify

6

the agreed-upon terms of that agreement.[5] For that reason, as persuasively stated by the District Court, "any subsequent agreement involving [Arleen's] life insurance policy would directly modify the provision of the MSA which clearly states that each waived any interest in the other's life insurance policy. Thus, such an agreement would need to be in writing as per the terms of the MSA." (App. at 207 n.3.)

## IV. CONCLUSION

For the above reasons, we will affirm the judgment of the District Court.

---

[5] Even if we were to consider the validity of the purported oral agreement, our analysis would not proceed far because in New Jersey "a mere verbal expression of intent to change a beneficiary designation is ineffective." *DeCeglia v. Estate of Colletti*, 625 A.2d 590, 594 (N.J. Super. Ct. App. Div. 1993). Since his designation as primary beneficiary of the policy had severed, Arleen would have needed to reinstate Joseph as the primary beneficiary under the policy. *See id.* at 593. But Arleen took no action that would corroborate Joseph's account of their unwritten agreement.